HENRY P. ARSENAULT *vs.* COMMONWEALTH.

Suffolk. January 2, 1968. — February 2, 1968.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & REARDON, JJ.

*Practice, Criminal,* Plea, Probable cause hearing, Assistance of counsel. *Constitutional Law,* Assistance of counsel.

Review of decisions of the Supreme Court of the United States regarding retroactivity of constitutional rules of criminal procedure established by that court for State courts. [578, 581]

The rule of *White* v. *Maryland,* 373 U. S. 59, is not applicable retroactively; and it did not require that a judgment rendered against the defendant in a murder case and affirmed by this court on appeal several years before the *White* decision be reversed on writ of error by reason of the facts that at a probable cause hearing in a District Court the defendant, not represented by counsel, had pleaded guilty to the murder charge and that evidence of such plea had been admitted at his trial. [584]

PETITION for a writ of error filed in the Supreme Judicial Court for the county of Suffolk on May 20, 1966.

The case was reserved and reported by *Kirk,* J.

*Charles M. Burnim* for the petitioner.

*Willie J. Davis,* Assistant Attorney General, for the Commonwealth.

KIRK, J. This proceeding on a writ of error was reserved and reported by the single justice on the petition, the answer, the return of the Chief Justice of the Superior Court, the transcript of the trial in the Superior Court, the findings of the single justice and one assignment of error. The assignment of error is that the judge in the Superior Court "erred in receiving in evidence the fact that . . . [Arsenault] had pleaded guilty to the charge on trial in the Newton District Court while unrepresented by counsel."

The case as it originally came to us on appeal under G. L. c. 278, §§ 33A–33G, is reported sub nomine *Commonwealth* v.

*Devlin,* 335 Mass. 555, where the evidence of the circumstances preceding and attending the commission of the crime and the apprehension of the perpetrators is stated and the assignments of error are discussed and disposed of.

We summarize the facts found by the single justice relating to the assigned error, augmented or amplified where appropriate by undisputed facts of record. On the evening of February 4, 1955, Arsenault was arrested in connection with the shooting to death, during an attempted robbery, of a young man in Newton. The arrest took place a few minutes after the crime. The following morning a probable cause hearing was held in the Newton District Court. During the hearing, at which Arsenault was not represented or assisted by counsel, he "pleaded guilty" to two complaints charging, respectively, murder and assault with intent to rob. He was bound over for the grand jury who returned an indictment charging Arsenault with murder. On February 11, 1955, he was arraigned in the Superior Court and pleaded not guilty to the indictment. When arraigned, he was not represented by counsel. On February 21, 1955, on Arsenault's motion, counsel nominated by him was assigned to defend him under G. L. c. 277, §§ 47 and 55, and Rule 95 of the Superior Court (1954). Thereafter, at all material times, Arsenault was represented by and had the assistance of counsel. He was allowed funds for the employment of an investigator and psychiatrists. Upon the appointment of counsel he was granted thirty days within which to file special pleas. The Commonwealth filed particulars in response to his motion. On June 28, 1955, at the close of the evidence at the trial, his counsel filed and was given a hearing on a motion to quash the indictment, which was denied on the merits.

At the trial Arsenault testified in his own defence. Under direct examination he testified that he, with a codefendant, each with a gun in hand and a silk stocking as a face mask, and Arsenault having in addition a rope in a pocket inside his topcoat, entered a dwelling for the purpose of taking one Silverman's money, and that the gun which fired the fatal bullet was in his hand when the victim was shot. On

cross-examination the district attorney read to Arsenault the complaint from the files of the Newton District Court charging him with murder and asked him how he had pleaded to it. Arsenault replied that he did not remember. He was asked to read the complaint, including the plea, and having done so said that his memory was not refreshed. The district attorney then incorporated part of the complaint and the plea in a question to Arsenault and asked him if it refreshed his memory and he replied that it did not, that he did not know what he had said. Eventually, in the Commonwealth's rebuttal, a witness who had been present at the probable cause hearing testified that he heard Arsenault plead guilty to both complaints.[1] The jury found him guilty of murder in the first degree. He appealed to this court on assignment of errors, among which was the admission of his pleas made in the District Court. This court held the pleas admissible and affirmed the judgment. *Commonwealth* v. *Devlin*, 335 Mass. 555, 573. After respites, the sentence of death was commuted to life imprisonment by the Governor.

Arsenault's present petition is founded on the holding of the Supreme Court of the United States in *White* v. *Maryland*, 373 U. S. 59, reversing *White* v. *State*, 227 Md. 615. There is a close similarity between the *White* case and the case before us. At a preliminary hearing, White, not represented by counsel, pleaded guilty to murder. On arraignment, when represented by counsel, he pleaded not guilty. At his trial, White's earlier plea of guilty was admitted in evidence against him. In its reversal of the Maryland Court of Appeals which had held that the preliminary hearing was not a critical stage in a criminal prosecution in Maryland, the Supreme Court in a per curiam opinion said, "Whatever may be the normal function of the 'preliminary hearing' under the Maryland law, it was *in this case* as 'critical' a stage as arraignment under Alabama law. For petitioner

---

[1] The complaints, in specie, were not admitted in evidence, as might be inferred from the findings of the single justice.

entered a plea before the magistrate and that plea was taken at a time when he had no counsel" (emphasis supplied). 373 U. S. 59, 60. The Supreme Court held that the *White* case was governed by *Hamilton* v. *Alabama,* 368 U. S. 52.

At the outset it should be noted that Arsenault does not argue, and quite rightly, we think, that *Hamilton* v. *Alabama,* where under Alabama law the absence of counsel at the arraignment stage was deemed to be critical, has any application to the present case. Although Arsenault was without counsel when he pleaded not guilty at his arraignment in the Superior Court, the order of the judge relative to the filing of special pleas, entered as soon as counsel was appointed, affirmatively shows that all of the defences which could have been available to him were in fact made available to him. Some were used by him. We therefore do not have a case where "the degree of prejudice can never be known." *Hamilton* v. *Alabama,* 368 U. S. 52, 55. Rather, we have a case where the fact of no prejudice is demonstrable as matter of record. See *Macey* v. *Commonwealth,* 352 Mass. 519, 522–523; *Anderson* v. *United States,* 352 F. 2d 945 (Ct. App. D. C.); *Dean* v. *Maxwell, Warden,* 174 Ohio St. 193, 196–197.

We accordingly focus our attention on the applicability of *White* v. *Maryland,* 373 U. S. 59, to the instant case. The precise question is whether the rule of the *White* case should be retroactive; i.e., applied to cases in which the judgment of conviction has been rendered and the availability of appeal has been exhausted. *Tehan, Sheriff,* v. *United States ex rel. Shott,* 382 U. S. 406, 409, fn. 3. If the *White* case is retroactive it governs the case before us. The Supreme Court of the United States has not yet decided the issue. In *Nadeau* v. *State,* 232 Atl. 2d 82 (Maine, 1967), which bears a striking factual resemblance to the *White* case and the case before us, the Supreme Judicial Court of Maine, in a persuasive opinion, reached the conclusion that the *White* case should not be retroactive.[2] We are of the same

[2] In the *Nadeau* case, the defendant's plea of guilty at the probable cause hearing was admitted without objection at the trial.

opinion. See *Commonwealth* v. *Morrissey,* 351 Mass. 505, 510–511.

In reaching our conclusion we must be guided by our understanding of the rationale underlying the decisions of the Supreme Court regarding the retroactivity of constitutional rules of criminal procedure established by that court for State courts. These decisions are: *Linkletter* v. *Walker, Warden,* 381 U. S. 618 (exclusionary rule under Fourth Amendment established by *Mapp* v. *Ohio,* 367 U. S. 643, held not retroactive and not applicable to State court convictions which had become final before its rendition). *Tehan, Sheriff,* v. *United States ex rel. Shott,* 382 U. S. 406 (prohibition under Fifth Amendment, established by *Griffin* v. *California,* 380 U. S. 609, of comment at trial by prosecution or court on defendant's election not to take the stand, held not retroactive and not applicable to cases where final conviction secured in State courts prior to *Griffin* decision on April 28, 1965). *Johnson* v. *New Jersey,* 384 U. S. 719 (exclusionary rules under Fifth Amendment, relating to custodial interrogation in absence of counsel, established by *Escobedo* v. *Illinois,* 378 U. S. 478, and *Miranda* v. *Arizona,* 384 U. S. 436, held not retroactive. The *Escobedo* exclusionary rule is available only to persons whose trials began after June 22, 1964, the date of the decision. The *Miranda* exclusionary rule is available only to persons whose trials had not begun "as of June 13, 1966," the date of the decision). *Stovall* v. *Denno, Warden,* 388 U. S. 293 (exclusionary rules under Sixth Amendment, relating to pre-trial confrontation of accused by victim or witnesses, in absence of accused's counsel, established by *United States* v. *Wade,* 388 U. S. 218, and *Gilbert* v. *California,* 388 U. S. 263, held not retroactive and applicable only to Wade and Gilbert and to "all future cases which involve *confrontations for identification purposes conducted . . . after this date* [June 12, 1967]" [emphasis supplied]).

It appears therefore that the cases where retroactivity has been discussed are cases where retroactivity has been denied. In *Stovall* v. *Denno, Warden,* however, the court re-

ferred to those cases where retroactive effect was expressly or implicitly granted, saying "It is true that the right to the assistance of counsel has been applied retroactively at stages of the prosecution where denial of the right must almost invariably deny a fair trial, for example, at the trial itself, *Gideon* v. *Wainwright*, 372 U. S. 335, or at *some forms of arraignment, Hamilton* v. *Alabama*, 368 U. S. 52, or on appeal, *Douglas* v. *California*, 372 U. S. 353. . . . We have also retroactively applied rules of criminal procedure fashioned to correct serious flaws in the fact-finding process at trial. See for example *Jackson* v. *Denno*, 378 U. S. 368 [coerced confession]" 388 U. S. at 297–298. Similarly, in *Johnson* v. *New Jersey*, 384 U. S. 719, 727–728, the court said that where retroactive application of a rule was given, it was because the (newly established) rule "affected 'the very integrity of the fact-finding process' and averted 'the clear danger of convicting the innocent.' *Linkletter* v. *Walker*, 381 U. S. at 639; *Tehan* v. *Shott*, 382 U. S. at 416."

Apart from the foregoing statements which are explanatory of the criteria followed in cases where retroactive effect had already been given, the four cited decisions point to affirmative and negative propositions which bear upon the issue of retroactivity. Retroactivity in each case must be determined "by looking to the peculiar traits of the specific [new] 'rule in question.'" 384 U. S. at 728. 381 U. S. at 629. 382 U. S. at 410. "[T]he retroactivity or nonretroactivity of a [new] rule is not automatically determined by the provision of the Constitution on which the dictate is based." *Johnson* v. *New Jersey*, 384 U. S. 719, 728.

Similar negative propositions may be inferred from other decisions. The fact that a condemned practice occurred at a "critical stage" of the proceedings does not require that the rule be applied retroactively. In *Tehan, Sheriff*, v. *United States ex rel. Shott*, retroactivity of *Griffin* v. *California* was denied on the dual grounds of the justified long established reliance on *Twining* v. *New Jersey*, 211 U. S. 78, and of the devastating impact which the retroactivity of the new rule would have on the administration of criminal

justice in the States affected. The fact remains, nevertheless, that the condemned practice always was at a "critical stage" in that it always took place at the very climax of a criminal trial: the argument of the prosecution and the charge to the jury by the judge. The defendant's exercise of his constitutional right to remain silent was at the price of an implied admission of every evidential fact presented by the prosecution of which the defendant could be found, by inference or otherwise, to have knowledge. See Appendix to *Chapman* v. *California,* 386 U. S. 18, 26.

Cognate to this point also is the holding in *Stovall* v. *Denno, Warden,* 388 U. S. 293. There, as in *White* v. *Maryland,* the condemned practice was characterized as being a "critical stage." 388 U. S. at 298. The same characterization was made in *United States* v. *Wade,* 388 U. S. 218, 237, and in *Gilbert* v. *California,* 388 U. S. 263, 272. Despite the characterization, the exclusionary rule in the latter two cases was held in *Stovall* v. *Denno, Warden,* not to be retroactive. It would seem clear, then, that the fact that the condemned act in the absence of counsel is a "critical stage" is not determinative of the issue of retroactivity.

Finally, none of the cases dealing with retroactivity has considered the gravity of the offence or the severity of the sentence to be a factor in the resolution of the issue. We have no reason to believe that they should be factors in the consideration of a case such as the one before us.

On the affirmative side, the Supreme Court of the United States, with respect to retroactivity, has applied, though in varying forms of expression, a pragmatic test: the court looks to (1) the purpose of the new rule, (2) the reliance placed upon the old rule, and (3) the effect on the administration of justice of a retroactive application of the new rule. *Linkletter* v. *Walker, Warden,* 381 U. S. at 636. *Tehan, Sheriff,* v. *United States ex rel. Shott,* 382 U. S. at 419. *Johnson* v. *New Jersey,* 384 U. S. 719, 729. *Stovall* v. *Denno, Warden,* 388 U. S. 293, 297. The decision ultimately rests on a judicial assessment of the probabilities. See 384 U. S. 719, 728–729; 388 U. S. 293, 298.

With these guidelines we enter upon the inquiry whether in our judgment the rule of *White* v. *Maryland* should be retroactive. The problem is before us only because the judge who presided at the trial of the case on the merits admitted testimony of Arsenault's plea of guilty at the probable cause hearing in the District Court, where he was without counsel. At this point it may be useful to pause and make a few relevant observations. The offences complained of were not within the jurisdiction of the District Court. G. L. c. 218, § 26. Under the practice in this Commonwealth and many other States, a District Court or corresponding judicial officer can make no determination of guilt or innocence of charges such as those made against Arsenault. No rights need be asserted and no defences need be reserved at a probable cause hearing. *Commonwealth* v. *O'Leary*, 347 Mass. 387, 389. *Macey* v. *Commonwealth*, 352 Mass. 519, 521. There is no requirement that a plea be offered or taken at the hearing. If a plea is made, it has no binding effect. After indictment, the accused is called upon to enter a plea de novo in the Superior Court. The sole function of the probable cause hearing is the determination whether the person complained of should be released or detained or be required to furnish bail pending an investigation by the grand jury of the charges. See G. L. c. 218 § 30.

We do not question that the testimony at the trial of Arsenault's plea of guilty in the District Court had an adverse effect. Under *White* v. *Maryland*, the ruling in the Superior Court admitting testimony of the pleas converted the probable cause hearing, an otherwise innocuous stage in the judicial process, into a "critical stage," at which Arsenault was without counsel. It would appear, therefore, that the sole purpose of the rule implicitly established in *White* v. *Maryland* is to see to it that a defendant at his trial is not adversely affected by an admission of guilt made by him at a probable cause hearing when he was without counsel.

Our next consideration is the reliance placed upon the old rule. The rule that a plea of guilty constituted an admission

which could be used against the defendant appears to have been first challenged in this Commonwealth in 1874 in *Commonwealth* v. *Ayers*, 115 Mass. 137. The issue was resolved against the defendant in a per curiam opinion. We think it is reasonable to infer that the old rule had been operative long before 1874 and conceivably extends back to Colonial times and beyond. See *Mead* v. *Boston*, 3 Cush. 404, 407; Wigmore, Evidence (3d ed.) § 848. It is certain that the old rule since 1874 has been applied in this and many other States in the belief that there was adherence to acceptable constitutional standards. Not until the *White* case was there intimation that the rule of evidence was constitutionally unacceptable and that counsel might be required at probable cause hearings. Indeed, for many years the practice in this Commonwealth and, we think it is fair to say, in many of our sister States was to appoint counsel for indigent persons charged with serious offences only after indictment; and oftentimes only at or shortly after arraignment.

The retroactive application of the *White* rule would have a serious impact upon the administration of criminal justice in this Commonwealth and elsewhere. "Empirical statistics are not available to us," as they were not available to the Supreme Court in the *Tehan* case, 382 U. S. at 418. We concede the likelihood that over the years some pleas of guilty were made when the defendant had a valid defence. Cf. *Stovall* v. *Denno, Warden*, 388 U. S. at 299. We are aware, too, of instances where pleas of guilty were rejected by District Court judges at probable cause hearings. We suggest with assurance, nevertheless, that the number of convictions obtained by evidence which contravened the *White* rule but otherwise conformed to all applicable constitutional standards and was in all respects trustworthy (see *Johnson* v. *New Jersey*, 384 U. S. 719, 731) would be very substantial. It has always been open to a criminal defendant to show circumstances which would undermine the credibility or force of the admissions. *Morrissey* v. *Powell*, 304 Mass. 268, 269. See *Buxton* v. *Somerset Potters' Works*, 121 Mass. 446,

448. Cf. *Stovall* v. *Denno, Warden,* 388 U. S. 293, 299. We think too that the retroactive application of the *White* rule would inure primarily to the benefit of those whose offences were so serious as to result in lengthy sentences imposed years before the decision in *White* v. *Maryland.* The unavailability of witnesses and evidence and the dimness of memory for events which occurred long ago would make retrial of such cases difficult if not impossible.

In contemplation of the judgment which must be made on the "question of probabilities," *Stovall* v. *Denno, Warden,* 388 U. S. 293, 298, we make the following observations. The purpose of the *White* rule has already been achieved by the rule in *Escobedo* v. *Illinois,* 378 U. S. 478, and *Miranda* v. *Arizona,* 384 U. S. 436, and, in a somewhat different context, in *United States* v. *Wade,* 388 U. S. 218, and *Gilbert* v. *California,* 388 U. S. 263. As already noted, none of these was applied retroactively. *Johnson* and *Stovall* cases, respectively. We think there is no valid distinction so far as retroactivity is concerned between an admission in the form of a plea in court at a preliminary hearing in the absence of counsel and an admission in the form of incriminating statements made to law enforcement officers during custodial interrogation outside of court in the absence of counsel.

All things considered, it is our conclusion that *White* v. *Maryland* is not retroactive. Accordingly the judgment is affirmed.[3]

*So ordered.*

---

[3] Our affirmation of the judgment also reaffirms the admonition of Chief Justice Wilkins in *Commonwealth* v. *O'Leary,* 347 Mass. 387, 389–390 (April 29, 1964), where it was said: "the prudent course for a District Court judge is to appoint counsel for an indigent defendant in every case where there is to be a probable cause hearing unless the defendant declines the assistance of counsel, in which event preservation of proof of that fact should be made. See Rule 10 of the General Rules, as amended on December 21, 1962 (345 Mass. 792)," now S.J.C. Rule 3:10, 351 Mass. 791.