UNITED STATES of America,
Appellant,

v.

John Albert LIGUORI, Appellee.

UNITED STATES of America,
Appellant,

v.

Jose GONZALEZ PEREZ and Francisco
Rivas, Appellees.

UNITED STATES of America,
Appellant,

v.

Israel VALLEJO, Petitioner-Appellee.

Nos. 350, 403, 404 and 405,
Dockets 35117, 34830, 34834 and 34972.

United States Court of Appeals,
Second Circuit.

Argued Dec. 4, 1970.

Decided Feb. 16, 1971.

Jay S. Horowitz, Asst. U. S. Atty.,
New York City (Ross Sandler, Asst.

U. S. Atty., and Whitney North Seymour, Jr., U. S. Atty. S. D. of New York, New York City, on the brief), for appellant in U. S. A. v. Liguori.

David A. Luttinger, Asst. U. S. Atty., New York City (Walter J. Higgins, Jr. and Charles B. Updike, Asst. U. S. Attys. and Whitney North Seymour, Jr., U. S. Atty. S. D. of New York, New York City, on the briefs), for appellant in U. S. A. v. Perez and Rivas and U. S. A. v. Vallejo.

Phylis Skloot Bamberger, The Legal Aid Society, New York City (Milton Adler, The Legal Aid Society, New York City, on the brief), for appellee, John Albert Liguori.

Gretchen White Oberman, New York City (diSuvero, Meyers, Oberman & Steel, New York City, on the brief), for appellees, Jose Gonzalez Perez, Francisco Rivas and Israel Vallejo.

Before MEDINA, FRIENDLY and SMITH, Circuit Judges.

MEDINA, Circuit Judge:

In these four appeals by the United States from orders vacating the convictions of John Albert Liguori, Jose Gonzalez Perez, Francisco Rivas and Israel Vallejo, involving, respectively, possession of small quantities of cocaine and marihuana, and in one instance possession of 48 pounds of marihuana, there is presented for the first time in this Circuit the question whether the Supreme Court's decisions in Leary v. United

States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969) and Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), which held unconstitutional the presumptions contained in 21 U.S.C. Sections 174 and 176a and 26 U.S.C. Section 4704(a), are to be applied retrospectively to convictions attacked collaterally under 28 U.S.C. Section 2255.[1] The District Judge in each case vacated the judgment and sentence, holding that the Leary and Turner decisions applied.[2] For the reasons stated in this opinion, we affirm.

## I.

Appellee Liguori was convicted in July of 1966 by Judge Weinfeld, sitting without a jury, for: (1) receiving, concealing, selling and transporting a half-grain of cocaine hydrochloride, in violation of 21 U.S.C. Sections 173 and 174; (2) purchasing, selling, dispensing and distributing cocaine hydrochloride not in or from the original stamped package, in violation of 26 U.S.C. Sections 4701, 4703, 4704(a), 4771(a) and 7237(a); and (3) receiving, concealing, purchasing, selling and transporting a half-ounce of marihuana, in violation of 21 U.S.C. Section 176a. The Government proved at the trial that Liguori mailed a carton from New York City containing the cocaine and marihuana to a friend in Florida in June of 1964. But no direct evidence showing that the marihuana and cocaine were illegally imported or that appellee knew they were illegally im-

1. This Court has already held that Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), and Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970) applied to cases on direct appeal even if the trial took place before the dates of those decisions, May 19, 1969 and January 20, 1970, respectively. United States v. Lopez, 414 F.2d 272 (2d Cir. 1969) (Leary); United States v. Shay, 426 F.2d 287 (2d Cir. 1970) (Turner); United States v. Jenkins, 427 F.2d 149 (2d Cir. 1970) (Turner); United States v. Vasquez, 429 F.2d 615 (2d Cir. 1970) (Turner). Other circuits have considered this question and have accorded Leary and Turner

full retrospectivity; see United States v. Scott, 425 F.2d 55 (9th Cir. 1970) (in banc) (Leary); Casados v. United States, 425 F.2d 723 (5th Cir. 1970) (Leary) (collateral attack); Martone v. United States, 435 F.2d 609 (1st Cir. 1970) (Turner) (collateral attack); United States v. Cross, 432 F.2d 431 (4th Cir. 1970) (Turner).

2. Liguori v. United States, 314 F.Supp. 1184 (S.D.N.Y.1970) (Weinfeld, J.); Perez v. United States, 315 F.Supp. 972 (S.D.N.Y.1970) (Palmieri, J.); Vallejo v. United States, 312 F.Supp. 244 (S.D. N.Y.1970) (MacMahon, J.).

ported was introduced at the trial. Liguori made no objection, however, to the use of the presumptions covering those elements of the crimes charged. This Court affirmed the conviction and five-year sentence after an appeal. United States v. Liguori, 373 F.2d 304 (2d Cir. 1967). Liguori filed a motion to vacate his sentence and conviction under 28 U.S.C. Section 2255 after the *Leary* and *Turner* decisions were announced. Judge Weinfeld decided that *Leary* and *Turner* were to be given complete retrospectivity and vacated the judgment and sentence as to the first and third counts, the sentence on the second count having already been served.

Appellees Perez and Rivas were also convicted in July of 1966, for receiving and concealing 48 pounds of marihuana, in violation of 21 U.S.C. Section 176a, and of conspiracy to do so. They, along with two other men, had been arrested after agreeing to sell the marihuana to a federal agent in New York City. Again at the trial no direct evidence of the illegal importation of the marihuana or appellees' knowledge thereof was introduced. The court instructed the jury on the basis of the presumption, which charge was excepted to by appellees. Perez received a ten-year sentence as a second offender and did not appeal his conviction, and Rivas's appeal from a five-year sentence was dismissed for lack of prosecution. Appellees filed separate motions to vacate their convictions under 28 U.S.C. Section 2255 after the decision in *Leary* was handed down, and Judge Palmieri granted the motions, holding that *Leary* applied.

Appellee Vallejo was convicted in March of 1966 for having purchased, sold, dispensed and distributed 3.22 grams of cocaine other than in or from the original stamped package, in violation of 26 U.S.C. Sections 4701, 4703, 4704(a), 4771(a) and 7237(a), and for receiving, concealing and facilitating the transportation of the cocaine, in violation of 21 U.S.C. Sections 173 and 174. Vallejo and another man were apprehended in New York City in September of 1964 after a federal narcotics agent, while walking toward them, observed them dropping tinfoil envelopes to the pavement. Here also the Government introduced no evidence as to the illegal importation of the cocaine, appellee's knowledge of the illegal importation, or that he had purchased, sold, dispensed or distributed the cocaine in other than the original stamped package. Similarly, the trial judge incorporated the presumptions in his charge to the jury, and appellee made no objection. Appellee received a ten-year sentence as a second offender and his conviction was affirmed from the bench on appeal. Vallejo filed his motion to vacate the conviction under 28 U.S.C. Section 2255 after *Turner* was decided, and Judge MacMahon granted the motion, holding that *Turner* applied retrospectively.

Although appellees Liguori and Vallejo did not question the use of the presumptions at trial, and apparently none of the appellees raised the issue on appeal, we hold that they are not therefore barred from raising it now. At the time of the trials only one case, Erwing v. United States, 323 F.2d 674 (9th Cir. 1963), had held the presumption of 21 U.S.C. Section 174 unconstitutional with respect to cocaine, but no other circuit followed this holding and the decision was not binding in this Circuit. Other than *Erwing*, the decisions solidly sustained the presumptions against constitutional attack. United States v. Coke, 364 F.2d 484 (2d Cir. 1966), cert. denied, 386 U.S. 918, 87 S.Ct. 877, 17 L.Ed. 2d 789 (1967) (21 U.S.C. Section 174); United States v. Gibson, 310 F.2d 79 (2d Cir. 1962) (21 U.S.C. Section 176a); Jones v. United States, 377 F.2d 742 (8th Cir.), cert. denied, 389 U.S. 885, 88 S.Ct. 157, 19 L.Ed.2d 183 (1967) (26 U.S.C. Section 4704(a)). Under the circumstances the failure to make what was then a patently futile objection is not a bar. United States v. Lopez, 414 F.2d 272 (2d Cir. 1969); United States v. Scott, 425 F.2d 55 (9th Cir. 1970 *in banc*); Martone v. United States, 435 F.2d 609 (1st Cir. 1970).

## II.

In Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), the Supreme Court held that the presumption in 21 U.S.C. Section 176a,[3] that allowed a jury to find illegal importation of marihuana and defendant's knowledge thereof solely from possession, violated the due process clause of the Fifth Amendment. Using the "rational connection"[4] test for judging the constitutionality of statutory presumptions, the Court could not say with "substantial assurance" that a person in possession of marihuana was more likely than not to know that it was illegally imported, as it found that "a significant percentage of domestically consumed marihuana may not have been imported at all * * *." So the presumption of a defendant's knowledge of the illegal importation was struck down. The Court applied the same standard in invalidating the presumption of illegal importation and knowledge of illegal importation, contained in 21 U.S.C. Section 174,[5] with respect to possession of cocaine in Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), but upheld the statute with respect to possession of heroin and opium. The Court found that while all heroin and opium is illegally imported, coca leaves are legally imported for processing into cocaine and that more cocaine is legally produced in the United States than is smuggled into the country. *Turner* also struck down, with respect to the cocaine then involved, the presumption of 26 U.S.C. Section 4704(a),[6]

3. 21 U.S.C. Section 176a (1964) reads in relevant part:

Notwithstanding any other provision of law, whoever, knowingly, with intent to defraud the United States, imports or brings into the United States marihuana contrary to law, or smuggles or clandestinely introduces into the United States marihuana which should have been invoiced, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such marihuana after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or whoever conspires to do any of the foregoing acts, shall be imprisoned * * *.

Whenever on trial for a violation of this subsection, the defendant is shown to have or to have had the marihuana in his possession, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains his possession to the satisfaction of the jury.

4. See Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943), which describes the test as:

a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience. 319 U.S. at 467–468, 63 S.Ct. at 1245. (Footnote omitted.)

See also United States v. Gainey, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965) and United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965)..

5. 21 U.S.C. Section 174 (1964) reads in relevant part:

Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned * * *.

Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury.

6. 26 U.S.C. Section 4704(a) (1964) reads:

It shall be unlawful for any person to purchase, sell, dispense, or distribute narcotic drugs except in the original stamped package or from the original stamped package; and the absence of

which made the absence of the appropriate tax stamps prima facie evidence of purchasing, selling, dispensing and distributing a narcotic drug not in or from the original stamped package by the person proved to have been in possession of the drug. While the Court found the presumption rational as to heroin and opium, it held that the small amount of cocaine involved (14.68 grams of a cocaine and sugar mix) would not allow an inference of dealing in the drug, and the amount of theft of legal, stamped cocaine made the statutory presumption infirm as to purchasing or dealing in unstamped cocaine. As we find no significant difference between the rationale of *Leary* and that of *Turner*, at least as applied to small amounts of cocaine, we shall not distinguish between them in the ensuing discussion.

### III.

### A.

The Government argues that since the Supreme Court relied heavily on statistical data compiled in 1967 and 1968 in deciding that the statutory presumptions were irrational and therefore unconstitutional, the Court did not decide their constitutionality as to previous years. So, the argument continues, these decisions are limited to the years in which they were rendered and should not be applied to convictions that became final in prior years. Since the Supreme Court only decided that the presumptions deprived defendants of due process of law when viewed in the light of the contemporary statistics, leaving open the question of whether or not the presumptions were void from the time of their enactment,[7] the Government goes on to claim that this Court should not hold *Leary* and *Turner* applicable to these appellees, at least not before remanding these cases to the District Court for a hearing as to the validity of the presumptions in the years involved. As we are persuaded that this is not an accurate description of the findings in *Leary* and *Turner*, this argument must fail.

Dr. Timothy Leary was arrested for transporting marihuana in December of 1965 and tried in March of 1966, about the same time that appellees Perez and Rivas were arrested and tried. In *Leary* the Supreme Court decided the rationality of the Section 176a presumption as to Leary's knowledge of illegal importation, which meant his knowledge at the time of his arrest. Since the Court found the presumption invalid as to Dr. Leary's knowledge of illegal importation in December of 1965, it must also have been without a rational connection as to appellees Perez's and Rivas's knowledge in March of 1966. Moreover, in *Leary*, the Court referred to testimony and reports on smuggling and domestic production of marihuana presented at hearings held in 1955 and 1956 by the House and Senate committees on the bill containing the Section 176a presumption. It also consulted reports made by the Bureau of Narcotics between 1956 and 1967 on the amount of marihuana smuggled into the United States and the quantity of domestically grown marihuana that was discovered and destroyed by law enforcement agencies. The holding in *Turner*[8] rested heavily on the findings made in Erwing v. United States, 323 F.2d 674 (9th Cir. 1963). There the Ninth Circuit found no evidence as to any importation of cocaine hydrochloride into the United States, legally or illegally, and declared the Section 174 presumption invalid as to cocaine possessed by the defendant in 1959. There was also testimony in *Erwing* that almost no cocaine

appropriate taxpaid stamps from narcotic drugs shall be prima facie evidence of a violation of this subsection by the person in whose possession the same may be found.

7. 21 U.S.C. Section 174 and 26 U.S.C. Section 4704(a) first applied to cocaine in

1922 when cocaine was declared a narcotic drug. 42 Stat. 596 (1922). The 21 U.S.C. Section 176a presumption was enacted in 1956, 70 Stat. 570 (1956).

8. Turner was arrested in June of 1967 and tried in late 1967 or early 1968.

had been imported into the United States, legally or illegally, before 1959. The Court supplemented the findings in *Erwing* with statistical data on cocaine smuggling and domestic cocaine production compiled by the Bureau of Narcotics in 1967, and held that even though there is a substantial amount of smuggling of cocaine into the United States now, still much more cocaine is lawfully produced here. We conclude that *Leary* and *Turner* held the statutory presumptions to be void for the periods here at issue.

### B.

It is the Government's second principal contention that raises what we consider to be the most interesting question on these appeals. It is insisted that the three tests of Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965) were not properly applied and balanced, that undue emphasis was placed by the courts below on the "purpose" of the decisions, to "correct a flaw in the fact-finding process," and insufficient consideration given to the countervailing elements of "reliance" by law enforcement officials and the serious disruption of the administration of criminal justice that it is claimed would follow a ruling that the declaration of in-

validity of these presumptions is to be given retrospective effect. It is asserted that each and every one of the new constitutional rules of criminal substantive law and procedure that has been made either prospective or retrospective has removed a substantial impediment to a fair fact-finding process; and, in effect, that the *Linkletter* tests come down to a "matter of degree" and a "question of probabilities" that are something in the nature of divinations, too insubstantial in these cases to warrant a holding giving the invalidation of the presumptions retrospective effect. These arguments cannot be lightly dismissed as utterly frivolous. As shown in the Appendix to this opinion, which is a "Summary of Supreme Court Decisions After Linkletter on Question Whether New Rulings Holding Certain Criminal Procedures Unconstitutional Should Be Applied Retrospectively," some of these decisions on the subject of retrospectivity were made contemporaneously with the announcement of the new rule, some were made in brief Per Curiams containing a very limited, if any, statement of reasons,[9] and others in more or less lengthy opinions, often with one or more dissents. The spate of opinions by various courts [10] and articles in law reviews [11]

9. Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968); DeStefano v. Woods, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968); McConnell v. Rhay, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968); Arsenault v. Massachusetts, 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed. 2d 5 (1968); Berger v. California, 393 U.S. 314, 89 S.Ct. 540, 21 L.Ed.2d 508 (1969). See also Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), where the Court gave that decision retrospective effect in a footnote, and North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2089, 23 L.Ed.2d 656 (1969), where the Court granted retrospective effect to Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) without stating its reasoning at all.

In Fuller v. Alaska, 393 U.S. 80, 89 S.Ct. 61, 21 L.Ed.2d 212 (1968) and Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969), retro-

spective effect was denied to non-constitutional rulings in brief Per Curiams.

10. See United States v. Scott, 425 F.2d 55, 62 (9th Cir. 1970) (*in banc*) (dissenting opinion of Judge Trask); United States ex rel. Romano v. Fay, 360 F.2d 389 (2d Cir. 1966), cert. denied, Romano v. Follette, 385 U.S. 1020, 87 S.Ct. 725, 17 L.Ed.2d 557 (1967); In re Gaines, 63 Cal.2d 234, 45 Cal.Rptr. 865, 404 P.2d 473 (1965); In re Lopez, 62 Cal.2d 368, 42 Cal.Rptr. 188, 398 P.2d 380 (1965), cert. denied, 384 U.S. 1016, 86 S.Ct. 1929, 1930, 16 L.Ed.2d 1038 (1966); Ruark v. People, 158 Colo. 110, 405 P.2d 751 (1965), cert. denied, 384 U.S. 1019, 86 S.Ct. 1955, 16 L.Ed.2d 1042 (1966); People v. Worley, 37 Ill.2d 439, 227 N.E.2d 746 (1967); Arsenault v. Commonwealth, 353 Mass. 575, 233 N.E.2d 730, rev'd, 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5 (1968); People v. Sayers, 22 N.Y.2d 571,

discussing, criticizing and applying the *Linkletter* tests, may indicate that it is time to take a new look.

At least we may echo the statement of Mr. Justice Harlan in his dissent in Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969), at p. 260, 89 S.Ct. at p. 1040, that "the retroactivity doctrine is still in a developing stage." The confusion generated on the oral argument of these cases and in the briefs by the earnest efforts of able counsel, on the one hand, to persuade us that the application of the three-prong composite *Linkletter* test requires us to reverse the orders below, and, on the other hand, that its application compels us to reach the opposite result, has suggested that we seek the guidance of some more simple and less complicated approach.

■■ We think these cases now before us can be disposed of by applying the simple and universal rule that a judgment in a criminal case in which the prosecution has offered and the record discloses no proof whatever of various elements of the crime charged has a fatal constitutional taint for lack of due process of law. As we said in our *in banc* decision in United States ex rel. Angelet v. Fay, 333 F.2d 12, 16 (2d Cir. 1964), aff'd, 381 U.S. 654, 85 S.Ct. 1750, 14 L.Ed.2d 623 (1965), the question of whether to grant retrospectivity in this type of case should be decided with "precisely the same operations of the judicial process as does the development of a body of decisional law in any other field." We must examine the principles involved in the constitutional ruling under consideration and decide whether, upon "considerations of convenience, of utility, and of the deepest sentiments of justice," [12] the judgments of conviction were so "tainted by some fundamental unfairness within the orbit of constitutional law," United States ex rel. Angelet v. Fay, *supra* at 21, that we cannot allow them to stand.

■ *Leary* and *Turner* support the basic principle that a proper finding of guilt cannot be based on evidence that is rationally insufficient to support that finding. Thompson v. City of Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960). In the cases before us, as in *Leary* and *Turner,* the Government relied on a presumption that was without reason in fact to prove a material element of the crime, so that these convictions were tainted by a total lack of proof as to that element. These cases contain not only "some fundamental unfairness," therefore, but the worst type of fundamental unfairness, since the Government introduced no proof at all in any of them to sustain a finding that the respective appellees had knowledge of the illegal importation of the marihuana or cocaine, or that appellee Vallejo purchased cocaine in other than the original stamped package, all principal elements in the crimes charged. Even though appellees may have been in possession of the cocaine or marihuana, for

293 N.Y.S.2d 769, 240 N.E.2d 540 (1968), cert. denied, 395 U.S. 970, 89 S.Ct. 2107, 23 L.Ed.2d 759 (1969); Commonwealth v. Negri, 419 Pa. 117, 213 A.2d 670 (1965).

11. See Haddad, "Retroactivity Should Be Rethought": A Call for the End of the Linkletter Doctrine, 60 J.Crim.L., C. & P.S. 417 (1969); Mishkin, The Supreme Court, 1964 Term—Foreword: The High Court, the Great Writ, and the Due Process of Time and Law, 79 Harv.L. Rev. 56 (1965); Schaefer, The Control of "Sunbursts": Techniques of Prospective Overruling, 42 N.Y.U.L.Rev. 631 (1967); Schwartz, Retroactivity, Reliability, and Due Process: A Reply to Professor Mishkin, 33 U.Chi.L.Rev. 719 (1966); The Supreme Court, 1965 Term, 80 Harv.L.Rev. 123, 135 (1966); Note, Retroactivity of Criminal Procedure Decisions, 55 Iowa L.Rev. 1309 (1970); Note, Retroactivity of Constitutional Decisions, 41 Notre Dame Law. 206 (1965); Comment, Constitutional Rules of Criminal Procedure and the Application of Linkletter, 16 J.Pub.L. 193 (1967); Comment, Linkletter, Shott, and the Retroactivity Problem in Escobedo, 64 Mich.L. Rev. 832 (1966); Comment, The Retroactivity of Benton v. Maryland, 1969 U. Ill.L.F. 517.

12. Cardozo, The Nature of the Judicial Process, 149 (1921).

a federal law to have been violated there must have been, as the statutes then read, illegally imported cocaine or marihuana. So we hold that these convictions were properly vacated on the authority of *Leary* and *Turner* and we affirm the orders appealed from.

We decide these cases on the narrow basis just above stated. We express no opinion with respect to other cases, where guilty pleas have been the basis for judgments of conviction for similar violations of the narcotics laws or where some evidence, however slight, has been received on the subject of the importation of marihuana or cocaine and knowledge thereof by the defendant.

The orders are affirmed.

# APPENDIX

Summary of Supreme Court Decisions After Linkletter on Question Whether New Rulings Holding Certain Criminal Procedures Unconstitutional Should Be Applied Retrospectively.

*Linkletter* v. *Walker*
381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601
June 7, 1965

| | |
|---|---|
| New Ruling on Constitutional Criminal Procedure | Evidence obtained by the state in violation of the Fourth Amendment is to be excluded from all state criminal trials. *Mapp* v. *Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). |
| Retrospective | |
| Prospective | X |
| Court Opinion | X (7–2) |
| Per Curiam | |
| Purpose of the New Ruling | Enforcement of the Fourth Amendment rights by deterring illegal action of the police; is not advanced by retrospective application. |
| Reliance by Law Enforcement Officials | States relied on rule of *Wolf* v. *Colorado*, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949) against the constitutional demand of the exclusionary rule even though they knew their actions violated the Fourth Amendment; Court had approved of *Wolf* holding until *Mapp* decided. |
| Impact on the Administration of Justice | Retrospective application would tax the administration of justice "to the utmost" in the 24 states without the exclusionary rule, as they must hold hearings on excludability of evidence. |

*Tehan* v. *United States ex rel. Shott*
382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453
January 19, 1966

| | |
|---|---|
| New Ruling on Constitutional Criminal Procedure | Adverse comment by a prosecutor or judge on a defendant's failure to testify in a state criminal trial violates the Fifth Amendment privilege against self-incrimination. *Griffin* v. *California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). |
| Retrospective | |
| Prospective | X |
| Court Opinion | . X (5–2) |

| Per Curiam | |
| --- | --- |
| Purpose of the New Ruling | Upholds the whole complex of values that the privilege against self-incrimination represents; i. e. preserves the integrity of the judicial system, which is adversary, not inquisitorial, in nature, and respect for the inviolability of the individual human being, by discouraging the courts from penalizing the use of the privilege against self-incrimination. |
| Reliance by Law Enforcement Officials | States relied on the old rule for 56 years, constantly reaffirmed by the Court. |
| Impact on the Administration of Justice | Would be "grave indeed" on the six states that had allowed such comment, a "devastating" impact because retrospectivity would void all convictions where the defendant did not testify. |

*Johnson* v. *New Jersey*
384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882
June 20, 1966

| New Ruling on Constitutional Criminal Procedure | Any statement of a defendant elicited by the police during an interrogation may not be used against him at trial if the investigation had focused on a particular suspect who was in custody and the suspect had requested and been denied an opportunity to consult with his lawyer and the police had not effectively warned him of his right to remain silent. *Escobedo* v. *Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). Any statement elicited by the police stemming from an in-custody interrogation may not be used against a defendant at trial unless he was told that he had a right to remain silent, that anything he said would be used against him, that he had a right to consult with a lawyer and have the lawyer with him during the interrogation, and that a lawyer would be appointed to represent him if he could not afford one. *Miranda* v. *Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). |
| --- | --- |

| Retrospective | |
| --- | --- |
| Prospective | X |
| Court Opinion | X (3–4–2) |
| Per Curiam | |
| Purpose of the New Ruling | Guarantees the full effectuation of the privilege against self-incrimination by assuring that a person under interrogation responds only with intelligent understanding of the right to remain silent and the consequences of his answering. |
| Reliance by Law Enforcement Officials | States "fairly relied" during interrogations on prior cases that did not condemn the entire process of in-custody interrogation. |
| Impact on the Administration of Justice | Retrospectivity would "seriously disrupt" the administration of criminal laws in all states because these are new warnings, causing the retrial or release of many defendants found guilty on the basis of trustworthy evidence. |

<table>
<tr><td colspan="2" align="center">*Stovall* v. *Denno*<br>388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199<br>June 12, 1967</td></tr>
<tr><td>New Ruling on Constitutional Criminal Procedure</td><td>Law enforcement officials cannot exhibit an accused to witnesses before trial for identification purposes without giving notice to and in the absence of counsel.<br>*United States* v. *Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed. 2d 1149 (1967) and *Gilbert* v. *California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).</td></tr>
<tr><td>Retrospective</td><td></td></tr>
<tr><td>Prospective</td><td align="center">X</td></tr>
<tr><td>Court Opinion</td><td align="center">X  (4–2–3)</td></tr>
<tr><td>Per Curiam</td><td></td></tr>
<tr><td>Purpose of the New Ruling</td><td>Minimize the possibility of a conviction based on a mistaken identification by preventing any unfairness at a pretrial confrontation, thereby assuring a meaningful examination of the identification witness's testimony at trial, by having counsel present at the line-up; this assures the integrity and reliability of our judicial system.</td></tr>
<tr><td>Reliance by Law Enforcement Officials</td><td>Was "fair" and total reliance by all the states and the federal government on the old rule; there was no foreshadowing of the new rule.</td></tr>
<tr><td>Impact on the Administration of Justice</td><td>Retrospective application would "seriously disrupt" the administration of justice in the entire country as it would require hearings to determine whether the identification evidence was tainted or not, or whether it was harmless error.</td></tr>
<tr><td colspan="2" align="center">*Witherspoon* v. *Illinois*<br>391 U.S. 510, 523 n. 22, 88 S.Ct. 1770, 20 L.Ed.2d 776<br>June 3, 1968</td></tr>
<tr><td>New Ruling on Constitutional Criminal Procedure</td><td>Where a jury in a state criminal case has two distinct functions, to determine the guilt or innocence of the accused and then to determine whether the punishment is to be imprisonment or death, the state cannot exclude veniremen simply because they voiced general objections to capital punishment or expressed conscientious or religious scruples against its infliction.<br>*Witherspoon* v. *Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).</td></tr>
<tr><td>Retrospective</td><td align="center">X</td></tr>
<tr><td>Prospective</td><td></td></tr>
<tr><td>Court Opinion</td><td align="center">X  (5–1–3)</td></tr>
<tr><td>Per Curiam</td><td></td></tr>
<tr><td>Purpose of the New Ruling</td><td>"[t]he jury-selection standards employed here necessarily undermined 'the very integrity of the  *  *  *  process' that decided the petitioner's fate  *  *  *."</td></tr>
<tr><td>Reliance by Law Enforcement Officials</td><td>The Court implied that there had been reliance by the state.</td></tr>
<tr><td>Impact on the Administration of Justice</td><td>The Court implied that there would be some impact on the administration of justice in the states employing this jury-selection standard.</td></tr>
</table>

*Roberts* v. *Russell*
392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100
June 10, 1968

| | |
|---|---|
| New Ruling on Constitutional Criminal Procedure | The admission at a joint trial of a defendant's extrajudicial confession which implicated a co-defendant violated the co-defendant's right of cross-examination secured to him by the Sixth Amendment. *Bruton* v. *United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). |
| Retrospective | X |
| Prospective | |
| Court Opinion | |
| Per Curiam | X (6–1–2) |
| Purpose of the New Ruling | Despite cautionary instructions by the judge to the jury on the use of the confession, its admission resulted in a "serious flaw" in the fact-finding process. |
| Reliance by Law Enforcement Officials | This element was "not persuasive" since the old rule announced in *Delli Paoli* v. *United States*, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957) was under attack since its inception. |
| Impact on the Administration of Justice | Even if this factor may be "significant," there is a serious risk that the issue of guilt or innocence may not have been reliably determined. |

*DeStefano* v. *Woods*
392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308
June 17, 1968

| | |
|---|---|
| New Ruling on Constitutional Criminal Procedure | A state cannot deny a request for a jury trial in a serious criminal case under the Sixth Amendment. *Duncan* v. *Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed. 2d 491 (1968). The right to a jury trial under the Sixth Amendment extends to trials for serious cases of criminal contempt. *Bloom* v. *Illinois*, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968). |
| Retrospective | |
| Prospective | X |
| Court Opinion | |
| Per Curiam | X (5–2–2) |
| Purpose of the New Ruling | *Duncan:* States must respect the right to a jury trial because in the context of the institutions and practices by which we adopt and apply our criminal laws, the right to a jury trial tends to prevent arbitrariness and repression; these values are not served by requiring the retrial of all persons convicted by procedures not consistent with the Sixth Amendment. *Bloom:* A contempt trial is more fairly tried by a jury since the judge witnessed or suffered the alleged contempt and suggested prosecution for it. |
| Reliance by Law Enforcement Officials | *Duncan:* The states relied "in good faith" on past opinions of the Court that held the Sixth Amendment right to a jury trial was not applicable to the states. *Bloom:* Reliance was more justified here than in the pre-*Duncan* situation. |

| Impact on the Administration of Justice | *Duncan:* The impact would be "significant" in all states not until now accepting the Sixth Amendment guarantee, since all convictions for serious crimes would be in jeopardy. <br> *Bloom:* The adverse effects of invalidating all the cases of serious contempt convictions would be "substantial." |
|---|---|

### *McConnell* v. *Rhay*
### 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2
### October 14, 1968

| New Ruling on Constitutional Criminal Procedure | The Sixth Amendment requires that counsel be afforded to felony defendants in a proceeding for revocation of probation and imposition of deferred sentencing. <br> *Mempa* v. *Rhay,* 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967). |
|---|---|
| Retrospective | X |
| Prospective | |
| Court Opinion | |
| Per Curiam | X |
| Purpose of the New Ruling | The right to counsel goes to the "very integrity of the fact-finding process." |
| Reliance by Law Enforcement Officials | No comment. |
| Impact on the Administration of Justice | No comment. |

### *Arsenault* v. *Massachusetts*
### 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5
### October 14, 1968

| New Ruling on Constitutional Criminal Procedure | The right to counsel extends to a preliminary hearing where the defendant pleaded guilty and that guilty plea was put into evidence later at trial after it was retracted. <br> *White* v. *Maryland,* 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963). |
|---|---|
| Retrospective | X |
| Prospective | |
| Court Opinion | |
| Per Curiam | X |
| Purpose of the New Ruling | The denial of the right to counsel must almost invariably deny a fair trial, since only the presence of counsel could have enabled this defendant to know all the defenses available to him and to plead intelligently. |
| Reliance by Law Enforcement Officials | No comment. |
| Impact on the Administration of Justice | No comment. |

### Berger v. California
393 U.S. 314, 89 S.Ct. 540, 21 L.Ed.2d 508
January 13, 1969

| | |
|---|---|
| New Ruling on Constitutional Criminal Procedure | The absence of a witness from the jurisdiction would not justify the use at trial of his testimony at the pretrial hearing unless the state made a good faith effort to secure the witness's presence.<br>*Barber* v. *Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). |
| Retrospective | X |
| Prospective | |
| Court Opinion | |
| Per Curiam | X |
| Purpose of the New Ruling | One of the important objects of the right to confrontation is to guarantee that the fact finder had an adequate opportunity to assess the credibility of the witness. |
| Reliance by Law Enforcement Officials | The claim of reliance by the states was "most unpersuasive." *Barber* was "clearly foreshadowed, if not preordained," by *Pointer* v. *Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). |
| Impact on the Administration of Justice | No comment. |

### Desist v. United States
394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248
March 24, 1969

| | |
|---|---|
| New Ruling on Constitutional Criminal Procedure | The evidence obtained from an electronic surveillance of a public telephone booth cannot be introduced at trial if obtained without a search warrant in violation of the Fourth Amendment.<br>*Katz* v. *United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). |
| Retrospective | |
| Prospective | X |
| Court Opinion | X (4–1–3) |
| Per Curiam | |
| Purpose of the New Ruling | Same as in *Linkletter* since this is an exclusionary rule designed to deter illegal acts by the police. |
| Reliance by Law Enforcement Officials | The states had "fully justified" reliance, since it was a "clear break with the past," however clearly the ruling was foreshadowed by *Silverman* v. *United States*, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961), because this was the first time that the Court explicitly overruled *Olmstead* v. *United States*, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928) and *Goldman* v. *United States*, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322 (1942). |
| Impact on the Administration of Justice | There would be a "substantial" number of state cases affected, causing a "weighty burden" in determining whether tainted evidence had been used. |

*North Carolina* v. *Pearce*
395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656
June 23, 1969

| | |
|---|---|
| New Ruling on Constitutional Criminal Procedure | The Fifth Amendment guarantee against double jeopardy is enforceable against the states through the Fourteenth Amendment. *Benton* v. *Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). |
| Retrospective | X |
| Prospective | |
| Court Opinion | X  (4–3–2) |
| Per Curiam | |
| Purpose of the New Ruling | No comment. |
| Reliance by Law Enforcement Officials | No comment. |
| Impact on the Administration of Justice | No comment. |