UNITED STATES of America, Appellant,

v.

Anthony LOSCHIAVO,
Defendant-Appellee.

No. 498, Docket 75–1310.

United States Court of Appeals,
Second Circuit.

Argued Jan. 7, 1976.

Decided March 3, 1976.

John C. Sabetta, New York City (Paul J. Curran, U.S. Atty., S.D.N.Y., Edward J. Kuriansky and Lawrence Iason, Asst. U.S. Attys., New York City, on the brief), for appellant.

Mortimer Todel, New York City, for defendant-appellee.

Before ANDERSON, FEINBERG and MULLIGAN, Circuit Judges.

ROBERT P. ANDERSON, Circuit Judge:

Anthony Loschiavo was convicted on October 30, 1973, after a jury trial, of bribing one Pedro Morales, in violation of 18 U.S.C. § 201.[1] Morales had been the Deputy Director of the Harlem-East Harlem Office of the New York Model Cities Administration. At trial, the Government's evidence showed that Loschiavo had paid a total of $15,000 to Morales and one John Sanders, Acting Director of the Harlem-East Harlem Model Cities Program, in order to obtain from Model Cities a lease for a building he owned.

Loschiavo initially claimed that Morales and Sanders were not public officials as defined by 18 U.S.C. § 201(a). He subsequently conceded the issue, however, and the trial court charged the jury that:

> "Since the proof shows without dispute that the United States paid 80 per cent of Sanders' and Morales' salary and paid 100 per cent of the cost of the program which they were administering, they are public officials of the United States and were acting in their official capacities in connection with this lease."

Loschiavo was sentenced to imprisonment for one year and was fined $5,000. He appealed to this court, but did not squarely raise a point as to the "federal official" question, although he did argue that there was no basis for prosecution under a federal statute because the lease was executed, and the rent paid, by the City of New York, and

---

1. 18 U.S.C. § 201 provides in pertinent part: "(a) For the purpose of this section: 'public official' means . . . an officer or employee or person acting for or on behalf of the United States, or any department, agency or branch of Government thereof . . . in any official function, under or by authority of any such department, agency, or branch of Government . . .

\* \* \* \* \* \*

'official act' means any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in his official capacity, or in his place of trust or profit.

(b) Whoever, directly or indirectly, corruptly gives, offers or promises anything of value to any public official . . . or offers or promises any public official . . . to give anything of value to any other person or entity, with intent—

(1) to influence any official act; or

(2) to influence such public official . . . to commit or aid in committing, or collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States; or

(3) to induce such public official . . . to do or omit to do any act in violation of his lawful duty . . .

\* \* \*" shall be punished.

thus the federal government was not directly affected by the bribes. The conviction was affirmed without opinion, 493 F.2d 1399 (2 Cir. 1974). Loschiavo then filed a petition for certiorari, in which he claimed that Morales and Sanders were not "agent[s] or employee[s] of the federal government" so that "no transaction with them could properly be regarded as coming within the scope" of 18 U.S.C. § 201(b). The Supreme Court denied certiorari, 419 U.S. 872, 95 S.Ct. 133, 42 L.Ed.2d 111 (1974).

Loschiavo commenced serving his sentence on May 6, 1974, and was released on parole on October 29, 1974. On May 5, 1975, the last day of his parole,[2] he filed the present petition under § 2255 based upon this court's decision in *United States v. Del Toro,* 513 F.2d 656 (2 Cir.), *cert. denied,* 423 U.S. 826, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975).

In *Del Toro,* the Government proved that William Del Toro, William Kaufman, and Ralph Ruocco had bribed the same Pedro Morales, who was bribed by Loschiavo, to get Morales' help in obtaining a lease on a building owned by Ruocco, and for which Kaufman was rental agent. Consequently Del Toro and Kaufman were convicted of violating 18 U.S.C. § 201(b). The convictions were reversed by this court on the ground that the person bribed, Morales, was an employee of New York City, rather than of the federal government, and was not, therefore, a federal official as required under § 201.[3]

The district court granted Loschiavo's § 2255 motion, and said:

"There is no valid distinction between the *Del Toro* case and movant's case on the key issue of the nature of Morales' employment. Since this court did not have jurisdiction over the crime charged, the conviction must be vacated. The charge on the jurisdictional element was, in light of *Del Toro,* a plain error which clearly affected substantial rights of the movant. It may therefore be considered at this

juncture even though not raised at trial. Fed.R.Crim.P. 52(b)."

The Government has appealed.

 On the merits of the present case, this panel is bound by the holding in *Del Toro* on "the key issue of the nature of Morales' employment." The Government has emphasized factual distinctions between the *Loschiavo* and *Del Toro* cases, particularly the different points in time at which the two schemes for bribery unfolded, and the different leases they involved. It stresses the fact that federal funds had been authorized for the project, including the Loschiavo lease, which contrasts with the court's finding in *Del Toro,* 513 F.2d at 662, that "There were no existing committed federal funds for [the Del Toro lease]." These distinctions are, however, not determinative in this case. The type of public project involved, or the amount of federal funding entailed, may be important in applying other parts of the statute, such as the "official act" requirement of § 201(b)(1) or the "fraud . . . on the United States" requirement of § 201(b)(2), but for the purpose of deciding Morales' status as a "public official" under § 201(a), it is not the aspects of the particular project which are of the greatest significance, but the character and attributes of his employment relationship, if any, with the federal government. In *Del Toro* the court rested its conclusion that Morales was not a federal "public official" on the fact that he was not acting "under or by authority of any . . . department, agency or branch of [the federal] Government." Morales was found to be "a city employee, carrying out a task delegated to him by his superior [Sanders], another city employee"; and his powers and duties were the same at all times relevant to the present case as they were in *Del Toro.* There was testimony in both the Del Toro and Loschiavo trials that the Housing and Urban Development agency could not hire or fire persons in the positions of Morales and Sanders. These were the crucial fac-

---

**2.** Loschiavo had also paid the $5000 fine.

**3.** The relevant facts concerning Pedro Morales' employment status are set forth in detail in the *Del Toro* opinion, 513 F.2d 656, 658–62.

tors pertaining to Morales' employment status, which was in no way changed by the fact that federal funding had been already authorized for the project involved herein, though it had not been authorized in the *Del Toro* case. As the district court noted, in the present case, the jury, in finding Loschiavo guilty of bribing a public official necessarily found that Loschiavo's bribe was received by Morales. Inasmuch as this court held that Morales was not a federal "public official" within the meaning of 18 U.S.C. § 201(a), Loschiavo should not have been convicted of bribing him in violation of that federal statute.

■ The more difficult issues on this appeal are procedural. The principal question is whether Loschiavo is barred from collaterally attacking his conviction. The Government argues that he is barred from proceeding under 28 U.S.C. § 2255, because that statute is expressly limited to "[a] prisoner in custody"; but Loschiavo filed his motion on the last day of his parole. *State* prisoners on parole have been held to satisfy the "in custody" requirement of 28 U.S.C. § 2241, *Jones v. Cunningham,* 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963); and, similarly, those released on their own recognizances pending execution of sentence, *Hensley v. Municipal Court,* 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973). Section 2255 gives federal prisoners the same collateral remedy as is available to state prisoners under 28 U.S.C. §§ 2241–2254. *Davis v. United States,* 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974). Loschiavo's claim is not mooted by the fact that he has now completed his sentence. *Carafas v. LaVallee,* 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968); *cf. Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).

■ Even if § 2255 were unavailable to Loschiavo, in view of the fact that he had fully served his sentence under a federal felony conviction, he could simply bring a petition for *coram nobis* under the "All Writs" statute, 28 U.S.C. § 1651(a), because such relief is available from the sentencing court even after release from custody, *Unit-*ed States v. Morgan, 346 U.S. 502, 511–513, 74 S.Ct. 247, 252, 98 L.Ed. 248, 256 (1954); *United States v. Travers,* 514 F.2d 1171, 1172 (2 Cir. 1974); *United States v. Garguilo,* 324 F.2d 795, 796 (2 Cir. 1963), and it was that court in which Loschiavo brought his § 2255 motion. Where the litigant has exhausted other avenues of review, *coram nobis* may be sought but relief "should be allowed through this extraordinary remedy only under circumstances compelling such action to achieve justice." *United States v. Morgan, supra,* 346 U.S. at 511, 74 S.Ct. at 252, 98 L.Ed. at 257. This case however, does present such circumstances, as will appear *infra.* Section 2255 and *coram nobis* are similar, see *United States v. Travers, supra,* 514 F.2d at 1173 n. 1; *Strauss v. United States,* 516 F.2d 980, 985 n. 9 (7 Cir. 1975). It would "be a futile gesture," therefore, to force Loschiavo to return to the district court and file a *coram nobis* petition.

Between the completion of Loschiavo's direct appeal from his conviction and the filing of this application under § 2255, this court in *Del Toro* had determined that Morales was an employee of the City of New York and not a federal public official. So that at the time the district court ruled on Loschiavo's motion, therefore, it was apparent on the face of the record that the Government had not established an essential element of the statutory offense of § 201(b), because Morales, whom Loschiavo was alleged to have bribed, was not a federal public official. The district court granted Loschiavo's § 2255 application because, as a consequence of the *Del Toro* decision, no federal offense was charged, and the district court declared that it did not have subject matter jurisdiction over a charge of bribing a city officer or employee.

■ The Government contends that, because Loschiavo failed to raise his "federal official" claim on direct appeal, he is precluded from raising it now in a collateral attack. As a general proposition, of course, claims based upon constitutional errors or on a lack of jurisdiction, in the broad sense of the court's power to adjudicate the is-

sues, are not barred from being raised on collateral attack even though no direct appeal had been taken, *Sunal v. Large,* 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947); *Bowen v. Johnston,* 306 U.S. 19, 59 S.Ct. 442, 83 L.Ed. 455 (1939); while a non-constitutional claim which is not raised on direct appeal may properly be rejected as grounds for § 2255 relief. *Davis v. United States, supra,* 417 U.S. at 345–46, 94 S.Ct. at 2304, 41 L.Ed.2d at 118; *Kaufman v. United States,* 394 U.S. 217, 227 n. 8, 89 S.Ct. 1068, 1074, 22 L.Ed.2d 227, 237 (1969); *United States v. Wright,* 524 F.2d 1100, 1102 (2 Cir. 1975); *United States v. West,* 494 F.2d 1314 (2 Cir.), *cert. denied,* 419 U.S. 899, 95 S.Ct. 180, 42 L.Ed.2d 144 (1974); *United States v. Coke,* 404 F.2d 836, 846–47 (2 Cir. 1968). That the general rule is not absolute is indicated by what the Supreme Court said in *Sunal v. Large, supra.*

> "The rule which requires resort to appellate procedure for the correction of errors 'is not one defining power but one which relates to the appropriate exercise of power.' That rule is, therefore, 'not so inflexible that it may not yield to exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.'" 332 U.S. at 180, 67 S.Ct. at 1591, 91 L.Ed. at 1988.

The latest cases which discuss the general rule and variations on its use are *Davis v. United States, supra,* and, in this Circuit, *United States v. Travers, supra,* in which Judge Friendly, writing for the court, made a careful and thorough analysis of its application.

■ In the present case Loschiavo, following his conviction and sentence, took an appeal; but he did not squarely raise the issue of the Government's failure to prove the essential element that the accused had

bribed an alleged federal public official. This case, therefore, differs from both *Davis* and *Travers, supra,* as the petitioner in each of those cases had pursued to completion on direct appeal the issues later raised on collateral attack. In *Davis* the petitioner sought relief under § 2255 on the ground that the Ninth Circuit's opinion in *United States v. Fox,* 454 F.2d 593, a virtually identical case, effected a change in the law of that Circuit after the affirmance of Davis' conviction and that it, therefore, should be set aside.[4] The district court summarily denied the motion. "On appeal, the Court of Appeals affirmed without considering the merits of the petitioner's claim on the ground that '[t]he decision on the direct appeal is the law of the case,' and that therefore any 'new law, or change in law' resulting from its decision in *United States v. Fox* would 'not [be] applied in this circuit under circumstances such as here presented.' 472 F.2d 596." *Davis, supra,* 417 U.S. at 341, 94 S.Ct. at 2302, 41 L.Ed.2d at 116. The Supreme Court held, however, that the Ninth Circuit erred in denying Davis relief under § 2255 because the same rule set out in *Sanders v. United States,* 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), applied to Davis.

> "In *Sanders,* the Court held *inter alia,* that even though the legal issue raised in a § 2255 motion 'was determined against [the applicant] on the merits on a prior application,' 'the applicant may [nevertheless] be entitled to a new hearing upon showing an intervening change in the law . . . .' *Sanders v. United States,* 373 U.S. 1, 17 [83 S.Ct. 1068, 1078, 10 L.Ed.2d 148, 162]. The same rule applies when the prior determination was made on direct appeal from the applicant's conviction, instead of in an earlier § 2255 pro-

---

4. While the original appeal from Davis' conviction was pending in the Ninth Circuit the Supreme Court decided *Gutknecht v. United States,* 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970). The Ninth Circuit, therefore, remanded his case to the district court for consideration in the light of that case. The district court, on remand, ultimately decided that *Gutknecht* did not affect Davis' conviction. The Court of Appeals affirmed. While Davis' peti-

tion for certiorari was pending, the Ninth Circuit decided *United States v. Fox,* 454 F.2d 593, and the holding in that case was inconsistent with its ruling on Davis' claim. The Supreme Court denied certiorari and left the Ninth Circuit to resolve the conflict in the cases. A rehearing of Davis' claim was denied in the Ninth Circuit. He then sought relief under § 2255.

ceeding, 'if new law has been made . . since the trial and appeal.' *Kaufman v. United States,* 394 U.S. 217, 230 [89 S.Ct. 1068, 1076, 22 L.Ed.2d 227, 239] (1969)." *Davis v. United States, supra,* 417 U.S. at 342, 94 S.Ct. at 2603, 41 L.Ed.2d at 116.

In *Travers* this court held that a petitioner, convicted and sentenced for a mail fraud felony, who had directly appealed, to completion, the judgment of conviction and who, after his conviction was affirmed, had fully served his sentence, could collaterally attack the judgment. The case concerned a conspiracy to produce, sell and distribute counterfeit Diners' Club credit cards, and certain substantive counts which were based on the use of the counterfeit cards in collecting for goods or services already procured and which involved the use of the United States mail. Although Travers had been present on a few occasions when the cards had been used and once requested the use of one by another person, for his benefit, the specific counts were based on the use of the cards by a co-conspirator, Pucci, for which Travers could be found guilty under *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). This court affirmed Travers' conviction *sub nom. United States v. Kellerman,* 431 F.2d 319 (2 Cir. 1970), and in so doing rejected the appellant's claim that "the mailings subsequent to use of the cards were not related to the scheme sufficiently to come within the mail fraud statutes." 514 F.2d at 1172. The Supreme Court denied certiorari, 400 U.S. 957, 91 S.Ct. 356, 27 L.Ed.2d 266 (1970). Sometime later the Supreme Court, in *United States v. Maze,* 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974), in effect adopted the theory advanced in *Kellerman* by the appellant. Travers somewhat naturally took the view that he had been convicted of something that was not a federal offense, and thereupon mounted the collateral attack by way of a writ of coram nobis, on the basis of a non-constitutional claim that he had been convicted for an act which the law did not make criminal, in that the Government had failed to prove an essential element of the offenses, that is, that there was a relationship between particular mailings and the alleged fraudulent scheme.

Both *Davis* and *Travers,* therefore, were concerned with changes of law subsequent to the convictions of the respective petitioners which would have exonerated them if in force before the affirmances of their convictions on review.

The Government relies heavily on *Travers, supra,* for the proposition that none of these assertions on behalf of the petitioner makes any difference because the court in *Travers* stated:

"[W]e must take *Sunal* [*v. Large,* 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947)] as meaning that when the error is one which can be rectified by proper construction of a criminal statute without resort to the Constitution, a claim that a conviction was had without proof of all the elements required by the statute is not a constitutional claim as that phrase is used in respect of collateral attack, and that, in consequence, collateral relief will rarely be accorded to those who, even for apparently good reasons, did not exhaust the possibilities of direct review. . . In light of this, we limit our decision here to defendants who, like Travers, had gone through the full appellate process. Except to the extent that the foregoing discussion analyzes the issue, we leave to another day the determination of the proper result when less has been done." 514 F.2d at 1177.

It is true that in the district court Loschiavo allowed his claim, in which he had asserted that Morales was not a "public official," to lapse. In addition he did not raise it squarely before this court on appeal, but pressed his claim for reversal on a different ground.[5] He did, however, try to revive his

---

**5.** Until *Del Toro* was decided, there was little, if any, expressed doubt about Morales being a federal public official. The trial judge had no doubt about it, and there was a certain amount of reasonableness and logic in that interpretation. Loschiavo's attorney during the trial apparently became convinced that he was wrong in raising the defense that Morales was not a

first claim that Morales was not a federal public officer, and presented it in his petition for certiorari. This activity, though it proved ineffective, went a long way beyond not taking a direct appeal. Except for his ill-advised lapse in the middle, from the beginning of his trial to his application to the Supreme Court, he pressed the same claim he made in his collateral attack. This brings the present case within the "when less has been done" phrase of *Travers*, and this court must decide whether there are circumstances which, nevertheless, warrant the granting of § 2255 relief, see, e. g., *United States v. Liguori*, 438 F.2d 663, 665 (2 Cir. 1971).

The relief sought by Loschiavo stems from this court's own judicial interpretation, in the *Del Toro* case, that § 201(b) did not cover the bribery of an employee of the City of New York, such as Morales. The interpretation of the term [federal] "public official" in § 201 changed, therefore, between Loschiavo's trial, conviction and sentence and the filing of his application under § 2255, from one, used by the trial judge in his jury charge, that included an employee of the City of New York in the position of Morales, whose department was supplied some federal funds, to one declared by this court in *Del Toro*, which expressly excluded a person in Morales' position from the term "public official" in § 201, as a matter of law. This is comparable to the changes in law which formed the bases of the collateral attacks in *Sanders, Davis* and *Travers*.

The decision in *Del Toro*, which was filed sometime after Loschiavo had fully exhausted his search for relief on direct appeal, brought about a marked change in Loschiavo's situation. He had bribed exactly the same man, Morales, who occupied exactly the same position relative to the HUD project as Morales did when he was bribed by Del Toro. It is true that up the time *Del Toro* was decided, Loschiavo could not have made a collateral attack on his conviction because of the holdings in *Sunal, supra*, and its progeny. But after *Del Toro*, with a formal judgment of this court declaring that Morales was not a federal public official at any of the times involved, then it was clear that Loschiavo was being imprisoned for something that was not a federal criminal offense.

The circumstances were very much akin to those in *United States v. Liguori, supra*, in which several persons were convicted of dealing unlawfully in drugs, although the Government had failed to prove some essential elements of the offense, as it relied on certain statutory presumptions. The defendants, after conviction, did not raise on appeal the validity of the presumptions concerning the possession of certain drugs because existing case law indicated it would be futile to do so. Thereafter the Supreme Court held the presumptions unconstitutional in *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), and *Turner v. United States*, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970). The district courts found that *Leary* and *Turner* had made a change in the law and that it applied to the previously adjudged convictions of the petitioners in the *Liguori* case, and, therefore, the § 2255 motions to vacate the judgments of conviction were granted.

In the present case the change in the law from that pronounced by the district court at Loschiavo's trial and the decision of this court in *Del Toro* meant that Loschiavo was

federal public official. This was brought about through some mild persuasion by the trial court and some pressure from the Government relating to the handling of this and another charge against Loschiavo. As defendant's counsel, he went along, though somewhat reluctantly, (but without formal objection) to the court's charge to the jury which said that Morales was a federal public official. Thereafter the attorney developed a different theory of defense. This court never had the point called to its attention when it heard the direct appeal, and the fact

that Morales was not a federal public official was not so obvious that it occurred to anyone that such was the case, and that, in truth, the appeal concerned a conviction for something that was not a federal offense. Thus the defense lawyer unwittingly took the almost fatal step of not raising on direct appeal the claim he first made in the district court but abandoned because it seemed too unlikely and unpromising, and thereby technically barred Loschiavo from invoking either habeas corpus or § 2255 at a later date.

convicted for a federal offense that did not exist. The Government insists that he be charged with serving his prison sentence nevertheless. We consider that what Judge Medina said, writing for the court in *Liguori*, is, by analogy, applicable to the present case.

"We think these cases now before us can be disposed of by applying the simple and universal rule that a judgment in a criminal case in which the prosecution has offered and the record discloses no proof whatever of various elements of the crime charged has a fatal constitutional taint for lack of due process of law. As we said in our *in banc* decision in *United States ex rel. Angelet v. Fay*, 333 F.2d 12, 16 (2d Cir. 1964), aff'd, 381 U.S. 654, 85 S.Ct. 1750, 14 L.Ed.2d 623 (1965), the question of whether to grant retrospectivity in this type of case should be decided with 'precisely the same operations of the judicial process as does the development of a body of decisional law in any other field.' We must examine the principles involved in the constitutional ruling under consideration and decide whether, upon 'considerations of convenience, of utility, and of the deepest sentiments of justice,' the judgments of conviction were so 'tainted by some fundamental unfairness within the orbit of constitutional law,' *United States ex rel. Angelet v. Fay, supra*, at 21, that we cannot allow them to stand." 438 F.2d at 669. (Footnote omitted.)

There are certainly due process considerations which must be reckoned with in the present case. The Government is insisting on keeping Loschiavo branded with the conviction and prison sentence for a federal offense, in spite of *Del Toro*'s declaration that he was convicted for a non-existent federal offense. To say that in such circumstances the system of justice can provide no remedy because of a court-made rule that failure to take direct appeal on the specific issue bars all later motions for collateral attack, under the circumstances of this case, indicates a lack of due process in the judicial system.

When Loschiavo made a § 2255 motion, post *Del Toro*, to vacate the judgment of conviction, the district court had before it the matter of the bar to collateral attack and at that point could exercise its discretion to deny or grant the writ and hear the matter. It granted the motion and vacated the judgment of conviction. Following principles laid down in *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), relative to a collateral attack on a state court judgment, which are equally applicable to an attack on a federal court judgment, *Kaufman v. United States*, 394 U.S. 217, 222, 89 S.Ct. 1068, 1070, 22 L.Ed.2d 227, 231 (1969), we have in mind that

"Discretion is implicit in the statutory command that the judge, after granting the writ and holding a hearing of appropriate scope, 'dispose of the matter as law and justice require,' 28 U.S.C. § 2243." *Fay v. Noia*, 372 U.S. at 438, 83 S.Ct. at 848, 9 L.Ed.2d at 869.

This is consistent with *Sunal v. Large, supra*, 332 U.S. at 180, 67 S.Ct. at 1591, 91 L.Ed. at 1988, which cites *Bowen v. Johnston*, 306 U.S. 19, 27, 59 S.Ct. 442, 446, 83 L.Ed. 455, 461 (1939), for the proposition that

"[T]he rule which requires resort to appellate procedure for the correction of errors 'is not one defining power but one which relates to the appropriate exercise of power.' That rule is, therefore, 'not so inflexible that it may not yield to exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent."

The district court plainly did not abuse its discretion in any respect.

As the Supreme Court in *Davis*, citing and quoting *Hill v. United States*, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962), held,

"[T]he appropriate inquiry was whether the claimed error of law was 'a fundamental defect which inherently result[ed] in a complete miscarriage of justice,' and whether '[i]t . . . presented[ed] exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* [was] apparent.' " 417

U.S. at 346, 94 S.Ct. at 2305, 41 L.Ed.2d at 119.

The Court in *Davis* went on to say:

"In this case, the petitioner's contention is that the decision in *Gutknecht v. United States,* supra, as interpreted and applied by the . . . Ninth Circuit in the *Fox* case after his conviction was affirmed, establishes that his induction order was invalid . . . and that he could not be lawfully convicted . . . If this contention is well-taken, then Davis' conviction and punishment are for an act that the law does not make criminal. There can be no room for doubt that such a circumstance 'inherently results in a complete miscarriage of justice' and 'present[s] exceptional circumstances' that justify collateral relief under § 2255." 417 U.S. at 346–7, 94 S.Ct. at 2305, 41 L.Ed.2d at 119.

The petitioner, Loschiavo, was placed in the same hopeless situation of invalid penal custody with no clear way out and with the Government striving to block any remedy, in spite of the clear knowledge that he had been convicted on a charge which was no federal crime at all. The injustice of the case is sharply pointed up by reflecting that it was the same man, Morales, who received similar bribes in like circumstances from both Del Toro and Loschiavo. If then, this Court denied the petition and permitted the conviction of Loschiavo to stand, after it had reversed the conviction of Del Toro on the ground that the jury had been charged that it could find that Morales was a federal "public official" when it knew that the same charge had also been given to the jury in Loschiavo's case, the frustration and defeat of justice would be glaringly apparent to the most myopic and obtuse.

We conclude that there is no merit in the remaining arguments of the Government and comment only on two of them.

It is the Government's position that a decision of the Court of Appeals, such as *Del Toro,* cannot constitute a change in the law, because a decision of the Supreme Court is necessary. But it misconstrues the phrase a "change in the law" as defined in *Davis,* in which the Supreme Court said,

"The sole issue before the Court in the present posture of this case is the propriety of the Court of Appeals' judgment that a change in the law of that circuit after the petitioner's conviction may not be successfully asserted by him in a § 2255 proceeding." 417 U.S. at 341, 94 S.Ct. at 2302, 41 L.Ed.2d at 116.

The Supreme Court held that Davis could assert such a "change in the law" in a § 2255 motion.

The Government also argues that there is no "exceptional circumstance" or "miscarriage of justice" in the case because Loschiavo was convicted of and served a sentence for conduct which was "clearly illegal under state law." In other words the petitioner is, in its opinion, a reprehensible character and deserved what he got. A similar argument was rejected in *Travers,* 514 F.2d at 1177–1179, and we reject it here. *Pettibone v. United States,* 148 U.S. 197, 209–10, 13 S.Ct. 542, 547, 37 L.Ed. 419, 424 (1893).

The order of the district court granting the petition to vacate the judgment of conviction and the penalties imposed is affirmed.