**UNITED STATES of America, Plaintiff,**

v.

**Michael HOSKINS, Defendant.**

**No. 80 CR 535.**

United States District Court,
N. D. of Illinois, E. D.

May 14, 1981.

---

John Frese, Asst. U. S. Atty., Chicago, Ill., for plaintiff.

Robert Korenkiewicz, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge.

Michael Hoskins was charged in a 6 count indictment which included 3 felony charges under 18 U.S.C. § 201(g) (Counts 1, 3 and 5)[1] and 3 misdemeanor charges under 18 U.S.C. § 665(b) (Counts 2, 4 and 6)[2].

Counts 1 and 2 relate to a $50 bribe Hoskins received on or about April 6, 1979. Counts 3 and 4 relate to a $50 bribe Hoskins received on or about April 27, 1979. Counts 5 and 6 relate to a $50 bribe Hoskins received on or about April 27, 1979.

Mr. Hoskins pleaded guilty to each of the misdemeanor counts. This plea established the following facts: The defendant was an employee of the Illinois Bureau of Employment Security ("IBES"), a department of the State of Illinois. His job was to interview CETA job applicants, assess their eligibility, and refer eligible applicants to CETA hiring agencies for the City of Chicago. By threat of refusal to employ in connection with a grant and contract of assistance under CETA, Mr. Hoskins induced three CETA job applicants to give him $50 each on or about the dates charged in the indictment, and he received this money knowing that it was wrong to do so.

Mr. Hoskins next elected to be tried by the court on the felony counts, Counts 1, 3, and 5. The plea of guilty on the misdemeanor counts established all of the essential facts under the felony counts except the defendant's status. Thus, all the parties understood that the only issue to be tried was whether the defendant was a federal public official for purposes of § 201.[3]

The evidence at trial consisted of the testimony of Mrs. Elizabeth Gillespie, a Manager of the IBES with responsibility for the CETA programs administered by the IBES for the City of Chicago, several documents, and the federal statutes relating to Comprehensive Employment and Training Programs, 29 U.S.C. §§ 801 et seq. Upon the conclusion of the trial the court found the defendant not guilty based on the

---

**1.** Section 201(g) makes it a felony for a federal public official to receive a bribe for or because of any official act performed or to be performed by him.

**2.** Section 665(b) makes it a misdemeanor for any person to receive money by threat of refusal to employ in connection with a grant or contract of assistance under the Comprehensive Employment and Training Act of 1973 ("CETA").

**3.** In a substantially similar case, *United States v. Mosley*, 80 CR 537, Judge Marshall submitted the issue of defendant's status to the jury, which found the defendant guilty, and denied all defendant's motions requesting a finding that as a matter of law the defendant was not a federal public official.

finding that he was not a federal public official under 18 U.S.C. § 201(a). This opinion sets forth the court's findings of fact and conclusions of law.

Sometime prior to 1977, the City of Chicago became a prime sponsor of a CETA–PSE (Public Service Employment) plan which was approved by the Secretary of Labor. The statute provides for federal grants to prime sponsors who submit CETA plans which are approved by the Secretary of Labor. The approved CETA plan is the plan of the prime sponsor; it is not the Secretary of Labor's plan which is merely administered by the prime sponsor.

The eligibility requirements for persons who could participate in any CETA–PSE plan are set forth in the statute and regulations of the Secretary. 29 U.S.C. § 825(i). However, under CETA, the City as prime sponsor had full responsibility for the eligibility of those enrolled in the program. That responsibility could be delegated by the City to a third party provided that the Secretary of Labor approved the arrangement.[4]

The City apparently did delegate the responsibility for eligibility, at least with respect to Public Service Employment jobs, to the IBES. This delegation must have been approved by the Secretary of Labor at the time the City's CETA program plans were approved under 29 U.S.C. § 814. Under Section 814, "The Secretary shall, prior to approval of any plan, insure that the prime sponsor has demonstrated a recognizable and proven method of verifying eligibility of all participants." Section 813(a)(15) of Title 29 specifically contemplates that the prime sponsor, in its plan, could coordinate with local State employment security agencies and delineate the specific responsibilities of each.

During 1977 the United States Department of Labor ("DOL") conducted an investigation of the City's CETA–PSE program and apparently found irregularities. In August, 1977, the City and DOL entered into an agreement to establish a "procedure for referring and selecting PSE participants for the City's CETA program that will assure that CETA jobs are filled in accordance with applicable federal statutes and regulations." (Government Exhibit A.)

The agreement indicated that IBES was already in place as the agency delegated by the City to determine eligibility, but the agreement provided specific rules binding on the City regarding the determination of eligibility. The agreement also provided for DOL monitoring to assure adherence to the agreement and all requirements of CETA.

This agreement probably was voluntarily entered into by the City in order to avoid possible termination of federal funding. It is clear under the federal statute that the Secretary, upon making certain findings, may revoke a prime sponsor's plan and terminate financial assistance or withhold financial assistance. 29 U.S.C. § 816. However, the remedies provided in Section 816 are the only remedies available to the Secretary during the term of the prime sponsor's plan.[5] It is important to note that Section 816(b) specifically provides that nothing in that section "shall be deemed to reduce the responsibility and full liability of the prime sponsors...."

Nothing in the agreement changed the relative positions of the parties: The City, the prime sponsor of its CETA–PSE plan,

---

4. 29 U.S.C. § 825(i) provides as follows:

"Every recipient which receives funds directly from the Secretary shall be responsible for the allocation of such funds and the eligibility of those enrolled in the program and shall have responsibility to take action against its subcontractors, subgrantees, and other recipients to eliminate abuse in their programs and to prevent any misuse of funds by such subcontractors, subgrantees and other recipients. Prime sponsors may delegate the responsibility for determination of eligibility under reasonable safeguards, including provisions for reimbursement of cost incurred because of erroneous determinations made with insufficient care, provided that the Secretary has approved such an arrangement pursuant to the provisions of Section 814(a) of this title."

5. The Secretary had no authority to require any change in the prime sponsor's plan once it was in effect. See 29 U.S.C. § 814(e)(2).

had full responsibility for determining eligibility of those enrolled in the program, and that responsibility had properly been delegated to IBES. IBES was continuing to determine eligibility as the City's delegee.[6] The Secretary of Labor had only the power to remake the plan and terminate federal assistance or withhold funds, but no statutory or contractual authority to control the City in its administration of the City's plan, while the plan was in effect. While the agreement between the City and DOL provided for federal monitoring of the actions of the City in determining eligibility, it did not give DOL or the Secretary any greater authority over the City or the City's CETA plan than that granted under the statute.

■ The defendant was a state employee working for IBES. He could be hired, fired and supervised only by IBES personnel. His salary was paid by the State. Although the State was reimbursed for that salary under the Wagner-Peyser Act, the defendant could look only to the State for his salary and not to the federal government. Mr. Hoskins' sole job was to determine eligibility of applicants for the City's CETA–PSE program and to refer eligible applicants to PSE jobs.

The question under 18 U.S.C. § 201(a) is whether in performing his job as a state employee Mr. Hoskins was acting "for or on behalf of" the Secretary of Labor.[7] The Secretary of Labor's function under CETA was limited to approving a prime sponsor's plan, granting funds to the prime sponsor to implement its CETA plan and, upon making certain findings, terminating the plan and withholding funds. The determination of eligibility of persons enrolled in

the CETA plan was specifically the responsibility of the prime sponsor. 29 U.S.C. § 825(i). None of the remedial powers of the Secretary specified in 29 U.S.C. § 816 in any way limited the responsibility of the prime sponsor. The City delegated its responsibility to IBES and IBES performed under an agreement with the City. Although eligibility standards are federal standards set forth in the statute, the determination of eligibility, which is what Mr. Hoskins was doing, was not a federal function or responsibility.

The CETA plan was the City's plan—not the Secretary's plan. The Secretary could not re-write the plan (after it had been approved, while it was in effect) and he had no statutory authority to force the City to administer the plan in any special way. The Secretary had a big stick, namely the power to terminate funding, and DOL certainly used that stick to get the City to agree to certain procedural changes and safeguards in determining eligibility during the term of the City's plan, but the agreement did not alter the basic relationship between DOL, the City and IBES.

Mr. Hoskins was employed by and working for IBES, which in turn was, by delegation, fulfilling the City's obligations to determine eligibility. There was no federal function involved. Therefore, Mr. Hoskins could not have been working for or on behalf of the Secretary of DOL. At most he was acting for or on behalf of the City in fulfilling the responsibilities of the City (as delegated to IBES) to determine eligibility. Compare *U. S. v. Del Toro*, 513 F.2d 656 (2d Cir.), *cert. den.* 423 U.S. 826, 96 S.Ct. 41, 46

---

6. IBES apparently was acting under annual agreements with the City. Government Exhibit B was the agreement for fiscal year 1979. The agreement provided that IBES will provide specific placement services without charge to the City. IBES used Wagner-Peyser personnel to fulfill its obligations under the agreement. Such personnel are state employees whose entire salaries are reimbursed by the federal government under the Wagner-Peyser Act. A prime sponsor's use of State employment agency Wagner-Peyser personnel is contemplated in 29 U.S.C. § 813(a)(15).

7. Section 201(a) provided as follows:

" 'public official' means Member of Congress, or Resident Commissioner, either before or after he has qualified, or an officer or employee or person acting for or on behalf of the United States, or any department, agency or branch of Government thereof, including the District of Columbia, in any official function, under or by authority of any such department, agency, or branch of Government ..."

L.Ed.2d 42 (1975), and *U. S. v. Loschiavo*, 531 F.2d 659 (2d Cir. 1976).[8]

The government argues that the City in fact was an entity acting for or on behalf of DOL, that IBES was something like a sub-agent of DOL, and that Mr. Hoskins, an IBES employee, was, therefore, working for or on behalf of DOL. This argument is based on 29 U.S.C. § 812, which provides that the Secretary of Labor can act as if he were a prime sponsor in any area for which no prime sponsor has been designed or where the Secretary of Labor has terminated a local CETA program.[9]

The government's argument is plainly erroneous. The Secretary's power to act as a prime sponsor when there is no local prime sponsor does not make every actual prime sponsor someone acting for or on behalf of DOL. The City simply was not acting for or on behalf of the Secretary, but for itself as the prime sponsor of its own CETA plan.[10] Even the Secretary's remedial powers do not limit the responsibilities of the prime sponsor for its CETA plan. 29 U.S.C. § 816(b). Moreover, the City, as the prime sponsor, had specific responsibility for eligibility of persons enrolled in the CETA plan, which it could and did delegate to IBES. 29 U.S.C. § 825(i). Thus, in performing his job at IBES, Mr. Hoskins was acting for and on behalf of the City, not DOL.

We also note that the congressional purpose of the CETA legislation was to be achieved "by establishing a flexible, coordinated, and decentralized system of Federal, State and local programs." 29 U.S.C. § 801. This congressional statement of purpose refutes the government's position.[11]

Accordingly, the court concludes that the defendant is not a federal public official within the meaning of 18 U.S.C. § 201(a), and, as previously held, he is acquitted on Counts 1, 3 and 5.

---

8. The Seventh Circuit has affirmed a district court's finding that an area management broker under contract with HUD and the broker's president were persons acting "for or on behalf of the United States" under Section 201(a) because they were in a position of responsibility and were enabled to exercise discretion for and on behalf of HUD in operating the system to provide for the rehabilitation of HUD properties. We note that the broker had a contract with the federal government to perform what was essentially HUD's obligation, namely rehabilitation of HUD's properties. *United States v. Griffin*, 401 F.Supp. 1222 (S.D.Ind.1975), aff'd w/o published opinion, 541 F.2d 284 (7th Cir. 1976). This case is obviously distinguishable on several material grounds. In this case, the function being performed was a City, not a DOL, function and there was no contract between DOL and IBES.

9. The government also notes that 29 U.S.C. § 816(h) provides that the Secretary may utilize the services of state and local agencies and their employees for the purpose of carrying out Section 816. As noted above, Section 816 deals with the right of the Secretary to terminate a CETA program. The Secretary did not terminate the City's CETA program under Section 816 and did not take over any responsibilities of the City as prime sponsor. Thus, § 816 has no application to this case.

10. The statute frequently and consistently refers to "a prime sponsor's plan." See particularly 29 U.S.C. §§ 813(b), 814(e)(2), 816(c) and 819(e). Also, the agreement between DOL and the City refers to "the City's CETA plan."

11. In its pretrial memorandum the government argued that the CETA legislation made it clear that a prime sponsor was the agent of DOL. In post-trial oral argument the government abandoned this argument.