**Michael PIERVINANZI, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**Nos. 00 CIV 1894 PKL, 89 CR 229 PKL.**

United States District Court, S.D. New York.

March 28, 2001.

James A. Mitchell, Stillman & Friedman, P.C., New York City, for petitioner.

Mary Jo White, Daniel A. Braun, United States Attorney, Southern District of New York, New York City, for respondent.

## OPINION AND ORDER

LEISURE, District Judge.

Petitioner Michael Piervinanzi moves for a reduction in his sentence pursuant to 28 U.S.C. § 2255. Piervinanzi argues that a change in the law entitles him to a downward departure from the United States Sentencing Guidelines' range which applied to his offenses. For the following reasons, Piervinanzi's petition is denied.

## BACKGROUND

The Second Circuit has previously discussed the facts underlying Piervinanzi's conviction and the procedural history of this case. *See United States v. Piervinanzi,* 23 F.3d 670 (2d Cir.1994). Therefore, only the facts relevant to Piervinanzi's petition are recited herein. In 1988, Michael Piervinanzi and several others participated in two schemes to illegally transfer more than $38 million out of American banks into overseas accounts. The first scheme involved the attempted fraudulent wire transfer of $14.2 million from Irving Trust Company into accounts in the Cayman Islands. When that scheme failed, Piervinanzi and his co-conspirators attempted another fraudulent wire transfer of $24 million from Morgan Guaranty to an account in London. This plan also failed. *See id.* at 672–74.

On May 17, 1991, after an eleven day jury trial, the jury returned a verdict convicting Piervinanzi of the following seven counts: (1) conspiracy to commit wire fraud, bank fraud, and money laundering in violation of 18 U.S.C. § 371; (2) attempted bank fraud in violation of 18 U.S.C. §§ 1344 and 2; (3) attempted money laundering in violation of 18 U.S.C. §§ 1956(a)(2) and 2; (4) wire fraud in violation of 18 U.S.C. §§ 1343 and 2; (5) attempted bank fraud in violation of 18 U.S.C. §§ 1344 and 2; (6) attempted money laundering in violation of 18 U.S.C. §§ 1956(a)(2) and 2; and (7) money laundering in violation of 18 U.S.C. §§ 1957(a) and 2. Piervinanzi was tried and sentenced with co-conspirator Daniel Tichio, who was also convicted of Counts One, Two, and Three. This Court sentenced Piervinanzi to concurrent terms of 210 months imprisonment on each of the seven counts of conviction, well within the applicable United States Sentencing Guidelines' (hereinafter "Guidelines") range of 188 to 235 months. *See* June 23, 1992 Sentencing Transcript (hereinafter "June 23, 1992 Sent. Tr.") at 58.

At sentencing, both Piervinanzi and Tichio argued for downward departures on a number of grounds, including the claim that their conduct fell outside of the "heartland" of money laundering offenses, and therefore, should simply be sentenced as bank fraud. This Court rejected that argument and found that Piervinanzi's conduct constituted a heartland case for a money laundering offense. *See id.* at 55.

On appeal, Piervinanzi did not argue for a downward departure, but instead argued that his money laundering activities should have been merged with his underlying bank fraud charge, thereby precluding liability under 18 U.S.C. § 1956(a)(2). The Second Circuit, however, found Piervinanzi's argument meritless and held that "attempting to fraudulently transfer funds out of the banks was analytically distinct from the attempted transmission of those funds overseas, and was itself independently illegal." *Piervinanzi,* 23 F.3d at 679. Although Piervinanzi did not argue

for a downward departure based on his activity falling outside of the "heartland" of money laundering cases, Daniel Tichio did raise this issue on appeal. Addressing Tichio's claim, the Second Circuit concluded that it was without authority to consider this Court's discretionary decision not to depart downward. *See id.* at 685.

On May 2, 1994, the Second Circuit reversed Piervinanzi's conviction on Count Seven and remanded the case for resentencing because the 210 month sentence exceeded the statutory maximum of five years for Counts One, Two, Four, and Five. *See id.* at 676. On September 27, 1994, this Court resentenced Piervinanzi to 188 months' imprisonment, the lowest possible sentence in his Guidelines' range. During this hearing, Piervinanzi asked the Court to consider the proposed amendments to the money laundering guidelines as a mitigating factor. The Court took them into account and lowered Piervinanzi's sentence by 22 months while noting that it would be willing to entertain the issue again if the Guideline amendments were adopted. *See* Sept. 27, 1994 Resentencing Transcript at 10.

In March of 1999, this Court resentenced Daniel Tichio and granted his request for a downward departure. However, this Court granted the departure solely because of Tichio's age, health and rehabilitation, not because Tichio's conduct fell outside of the heartland of money laundering activity. *See* March 10, 1999 Resentencing Transcript (hereinafter "March 10, 1999 Resent. Tr.") at 19.

On March 10, 2000, Piervinanzi filed the instant petition claiming that a change in the application of the law entitles him to a reduction in his current sentence.

### *DISCUSSION*

**1. *Timeliness of the Petition***

As a threshold issue, the Court must determine whether Piervinanzi filed this petition within the time limit prescribed by 28 U.S.C. § 2255. In April of 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act (hereinafter "AEDPA"), which imposed a one-year period of limitations for the filing of petitions pursuant to 28 U.S.C. § 2255. *See* Pub.L. No. 104–132, 110 Stat. 1214 (1996). The AEDPA limitation period runs from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255. Since Piervinanzi's conviction became final prior to the enactment of the AEDPA, the Second Circuit allows him a one-year grace period from the effective date of the statute—April 24, 1996—to file a Section 2255 petition. *See Mickens v. United States,* 148 F.3d 145, 148 (2d Cir.1998) (holding that the limitations period prescribed by the AEDPA does not bar a § 2255 motion filed within one year after the effective date of the Act).

Piervinanzi does not argue that his petition is timely based on any of the

statutory requirements above, but instead argues that Section 2255 relief is always available "where circumstances create a miscarriage of justice," and that a change in the law, culminating with this Court's resentencing of Tichio, supersedes the requirements of the AEDPA. *See* Reply Memorandum In Support of Petition For Writ of Habeas Corpus (hereinafter "Pet'r Reply Mem.") at 2. Piervinanzi seems to argue that because his petition is cognizable, which it is not, it is therefore timely. Timeliness, however, is a condition precedent to addressing whether a claim is cognizable. Since the enactment of the AEDPA, a petitioner must first satisfy the timeliness requirement and then address the traditional procedural bars discussed below. *See, e.g., United States v. Bokun,* 73 F.3d 8, 12–13 (2d Cir.1995) (outlining when § 2255 is available as a basis for relief).

■■■ Although Piervinanzi argues that a change in the law entitles him to relief under Section 2255, he does not argue that the change has "been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review," as required by the AEDPA. 28 U.S.C. § 2255(3). In fact, he argues that the change in law developed with this Court. *See* Pet'r Reply Mem. at 2. Piervinanzi relies on several cases which address when a Section 2255 petition is available after an intervening change in law. *See* Memorandum of Law In Support of Petition For Writ of Habeas Corpus (hereinafter "Pet'r Mem.") at 5–7. These cases, however, permit petitioners to attack collaterally their sentences only when the substantive law underlying their convictions is abrogated, rendering their formerly illegal conduct legal. *See Davis v. United States,* 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974) (holding that collateral relief was available to a petitioner convicted of failing

to appear for a physical examination at the draft board, once this law was abolished); *United States v. Loschiavo,* 531 F.2d 659 (2d Cir.1976) (determining that the "public official" who the petitioner had bribed was not, in fact, a public official, and therefore, the petitioner had been convicted for an offense that did not exist). Piervinanzi points to no authority—nor can the Court find any precedent—which changes the substantive law of money laundering and renders Piervinanzi's conduct non-criminal.

Thus, since Piervinanzi failed to file this petition within one year of the enactment of the AEDPA and cannot demonstrate a change in the money laundering statutes, this petition is time-barred and, therefore, must be denied. In addition to being untimely, the Court must deny the petition for the following, independent grounds.

### 2. *Piervinanzi's Claim for Relief is Not Cognizable Under Section 2255*

■■ To merit relief under Section 2255, a petitioner must present a cognizable claim. To determine whether Piervinanzi's claim is cognizable, the Second Circuit has instructed that "collateral attack on a final judgment in a criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in complete miscarriage of justice.'" *Graziano v. United States,* 83 F.3d 587, 589–90 (2d Cir.1996) (per curiam) (quoting *United States v. Bokun,* 73 F.3d 8, 12 (2d Cir.1995)). Piervinanzi claims that an intervening change of law has established that a sentencing court may depart downward if it believes the defendant's conduct falls outside of the "heartland" of money laundering cases, and therefore alleges that it would be a "complete miscarriage of justice" if a

downward departure was not granted in his case. *See* Pet'r Reply Mem. at 3.

■ Piervinanzi relies on *Davis* and *Loschiavo* to argue that a Section 2255 petition is available when a change in substantive law renders the petitioner's sentence a "complete miscarriage of justice." *See Davis,* 417 U.S. at 346–47, 94 S.Ct. 2298 ("Davis' conviction and punishment are for an act that the law does not make criminal. There can be no room for doubt that such a circumstance 'inherently results in a complete miscarriage of justice' and 'present(s) exceptional circumstances' that justify collateral relief under § 2255."); *Loschiavo,* 531 F.2d at 659 (same). *Davis* and *Loschiavo* are inapposite because, quite to the contrary, the activity that Piervinanzi was convicted of— money laundering—continues to constitute a crime. Therefore, Piervinanzi's sentence does not constitute a "complete miscarriage of justice" because he was sentenced for conduct which is still deemed criminal.

Moreover, the Second Circuit has followed the Seventh Circuit's conclusion that a "sentence within the Guidelines … cannot be a 'complete miscarriage of justice.'" *United States v. Springs,* 988 F.2d 746, 747 (7th Cir.1993) (noting that "[a]lthough a district judge's misunderstanding of the options for sentencing is regrettable, misapprehending the scope of one's discretion is some distance from a 'fundamental defect.'"); *see also Werber v. United States,* 149 F.3d 172, 177 n. 4 (2d Cir.1998) (highlighting that the Second Circuit has not yet developed a "framework for determining the existence of a complete miscarriage of justice in cases under the Sentencing Guidelines"); *Bokun,* 73 F.3d at 12–13 (noting that the subjective intent of the sentencing judge does not constitute a fundamental defect allowing collateral review); *United States v. Mikalajunas,* 186 F.3d 490, 496 (4th Cir.1999), *cert. denied,*

529 U.S. 1010, 120 S.Ct. 1283, 146 L.Ed.2d 230 (2000) (stating that "circuit courts of appeals have reserved judgment on whether a misapplication of the sentencing guidelines could ever support § 2255 relief but have held that errors of guideline interpretation or application ordinarily fall short of a miscarriage of justice."). Unlike *Springs,* this Court fully understood its discretion to depart downward and chose not to do so, although it acknowledged the severity of the sentence and reduced Piervinanzi's sentence to the lowest level in the Guidelines' range.

Finally, Piervinanzi fails to identify any constitutional or jurisdictional errors regarding his sentencing. Therefore, the Court's decision not to grant a downward departure does not constitute a "complete miscarriage of justice." Hence, Piervinanzi has failed to state a cognizable claim under Section 2255 and, therefore, his petition must be denied.

### 3. *Piervinanzi's Claim is Defaulted*

■ Piervinanzi's petition is also barred because he did not raise the issue of downward departure based on the "heartland" of money laundering cases on direct appeal. Piervinanzi attempts to overcome this jurisdictional requirement by arguing that his claims "addressed essentially the same substantive issues that are relevant to a 'heartland' departure claim." Pet'r Reply Mem. at 4–5. This Circuit, however, instructs that a defendant's failure to raise claims regarding the Sentencing Guidelines on direct appeal generally precludes these claims from being considered in a Section 2255 petition. *See Graziano,* 83 F.3d at 590 ("Insofar as claims regarding a sentencing court's error in failing to properly apply the Sentencing Guidelines are neither constitutional nor jurisdictional, we join several other circuits in holding that, absent a complete miscarriage of jus-

tice, such claims will not be considered on a § 2255 petition where the defendant failed to raise them on direct appeal."); *see also Knight v. United States*, 37 F.3d 769, 772–73 (1st Cir.1994) (holding that the failure to raise claims concerning the Sentencing Guidelines is not reviewable under § 2255 absent "exceptional circumstances"); *United States v. Schlesinger*, 49 F.3d 483, 485 (9th Cir.1994) (finding that "nonconstitutional sentencing errors that have not been raised on direct appeal have been waived and generally may not be reviewed by way of 28 U.S.C. § 2255").

 Where a petitioner fails to raise a claim on direct appeal, he must establish both the cause of failing to raise it and resulting prejudice from not raising it to allow the claim to be heard in a Section 2255 petition. *United States v. Frady*, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Piervinanzi cannot establish either factor. This Circuit has acknowledged that in some change of law cases, the defendant should not be penalized for failing to raise the issue on appeal. *See Ingber v. Enzor*, 841 F.2d 450, 454–55 (2d Cir.1988) (holding that because the mail fraud statute at issue was well-settled law before being overturned by the Supreme Court, it would be unfair and inefficient to expect attorneys to appeal these points of law). Where a claim is available, however, there is no excuse for default. *See Engle v. Isaac*, 456 U.S. 107, 134, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) (holding that default is not excused if defense counsel did not invoke the claim because it would be unlikely to succeed or where defense counsel simply failed to recognize the existence of a claim). Piervinanzi's heartland claim for a downward departure was quite obviously available to him on direct appeal, as he made the same argument previously at his sentencing hearing on June 23, 1992 and cited case law to

support his claim. Therefore, Piervinanzi has not demonstrated a compelling case for excusing his failure to raise the issue of downward departure on direct appeal and, therefore, this petition must be denied.

### 4. *Piervinanzi's Conduct Falls Within The Heartland of Money Laundering Offenses*

 Finally, the Court has previously addressed the merits of Piervinanzi's contention that his conduct falls outside of the heartland of money laundering offenses. In fact, on several occasions the Court has expressly found that Piervinanzi's offenses are indeed "a heartland case for a money laundering offense." *See, e.g.*, June 23, 1992 Sent. Tr. at 55. Additionally, the Second Circuit held that Piervinanzi's conduct was "analytically distinct" from the attempted bank fraud. *Piervinanzi*, 23 F.3d at 679. Piervinanzi's argument that a fundamental change in the application of the money laundering Guidelines takes this case out of the "heartland" is therefore unconvincing.

Piervinanzi essentially argues that a trend in granting downward departures, and sentencing on the underlying fraud statute, constitutes a change in the law. *See* Pet'r Reply Mem. at 2. No such trend exists when, as here, the defendant's conduct involves the type expressly considered by Congress and the Sentencing Commission. In fact, the Sentencing Guidelines were recently amended to prevent defendants from arguing that their conduct was "atypical" compared to conduct generally punished under the money laundering guidelines. *See United States v. Opran*, 2001 WL 138274, *1 (2d Cir. 2001) (noting that the Sentencing Guidelines were amended after *United States v. Smith*, 186 F.3d 290 (3d Cir.1999), which relied on the "atypical" theory, to avoid confusion). The *Opran* Court further not-

ed that the Second Circuit never adopted the "atypical" approach. *Id.* Other Circuits have also declined to grant downward departures when defendants' conduct fell within the money laundering guidelines. *See, e.g., United States v. Ross,* 210 F.3d 916, 928 (8th Cir.) ("While we appreciate the [sentencing] court's apparent discomfort with the proportionately larger sentence for money laundering than for the crime of wire fraud, for the purpose of resentencing we caution that the variation represents Congress' intent that money laundering crimes that promote further illegal activity are more dangerous to society and therefore should be punished more severely."), *cert. denied,* 531 U.S. 969, 121 S.Ct. 405, 148 L.Ed.2d 313 (2000); *see also United States v. Bockius,* 228 F.3d 305, 312 (3d Cir.2000) (holding that the "heartland of the money laundering guidelines is narrower than the inclusive scope of the money laundering statutes but [not limited] to drug trafficking and organized crime"); *United States v. Prince,* 214 F.3d 740, 768–69 (6th Cir.2000) (concealing proceeds of wire fraud falls within the heartland of money laundering and application of U.S.S.G. § 2S1.1 is appropriate), *cert. denied sub nom., White v. United States,* 531 U.S. 974, 121 S.Ct. 417, 148 L.Ed.2d 322 (2000). Additionally, courts have highlighted that Congress rejected proposed amendments to the money laundering Guidelines which attempted to narrow the money-laundering provisions. *See, e.g., United States v. Ford,* 184 F.3d 566, 587–88 (6th Cir.1999) (noting Congress' disapproval of the revisions and affirming the district court's refusal to grant a downward departure).

While Piervinanzi cites several cases where the sentencing courts have granted downward departures when the specific facts warrant, these cases involve conduct quite different than Piervinanzi's and sums of money significantly lower than the $38 million involved here. *See, e.g., United States v. Smith,* 186 F.3d 290 (3d Cir.1999) (involving illegal kickbacks of $170,000); *United States v. Woods,* 159 F.3d 1132 (8th Cir.1998) (involving a failure to disclose $20,000 in a bankruptcy case); and *United States v. Ferrouillet,* No. CR 96–198, 1997 WL 266627 (E.D.La. May 20, 1997) (involving illegal campaign contributions of $20,000).

Even if a trend in granting these downward departures does exist, which it does not, it would not constitute a "change in law" sufficient to grant this Section 2255 petition. As noted previously, a Section 2255 is available when the substantive law, on which the defendant is sentenced, has changed, and the resulting sentence constitutes a "complete miscarriage of justice." *See Davis,* 417 U.S. at 346–47, 94 S.Ct. 2298. Additionally, the change in law must be recognized by the Supreme Court and made retroactively applicable on collateral review to overcome the timeliness bar. 28 U.S.C. § 2255(3).

Finally, Piervinanzi argues that he deserves a downward departure because the Court granted Daniel Tichio a downward departure at his resentencing. *See* Pet'r Reply Mem. at 2. However, at no time did this Court imply that Mr. Tichio's departure was based on the money laundering Guidelines. Indeed, this Court explicitly noted that the departure was based on Tichio's age, health and rehabilitation. *See* March 10, 1999 Resent. Tr. at 19. At Piervinanzi's sentencing hearing, however, the Court expressly held that "the guidelines [were] appropriately considered with respect to the offense of which he was convicted." June 23, 1992 Sent. Tr. at 56. Therefore, there is nothing to indicate that Piervinanzi should have been sentenced differently.

274

Accordingly, this Court denies Piervinanzi's petition.

### CONCLUSION

For the foregoing reasons, Piervinanzi's petition to reduce his sentence pursuant to 28 U.S.C. § 2255 is HEREBY DENIED. Additionally, since the petitioner has not made a substantial showing of the denial of a constitutional right, this Court will not issue a certificate of appealability.

SO ORDERED.